---

(No. 16208.—Judgment affirmed.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* STANLEY WALCZAK *et al.* Plaintiffs in Error.

*Opinion filed December 16, 1924.*

1. CRIMINAL LAW—*time of conspiracy is not dated from its origin—punishment.* Conspiracy is a continuous offense, and the time of the commission of the crime, in determining under what law the punishment is to be fixed where the statute has been amended, is to be measured from the commission of the last overt act of the conspiracy and not from merely the origin of the conspiracy.

2. SAME—*what evidence is competent in establishing conspiracy to extort money.* To be competent in a prosecution for conspiracy formed for the purpose of extorting money it is not necessary that the evidence show that each defendant was paid money or that every witness for the prosecution was required to pay money, but whatever evidence tends to show concerted action of the defendants, designed for the common end complained of, is competent.

3. SAME—*what necessary to show common design in conspiracy.* While a common design is the essence of a conspiracy it is not

315—4

necessary to prove that the defendants actually came together and agreed to unite in such a design or to engage in a common effort to execute it, but it is only necessary to show that the defendants, either by acting together or separately, intentionally pursued a course tending toward the accomplishment of the object of which complaint is made.

4. SAME—*one conspirator is a party to the acts of the others.* One conspirator is a party to all the acts done by any of the others in furtherance of the common design, notwithstanding each performs different acts or uses different means.

5. SAME—*what instruction is proper in a prosecution for conspiracy to extort money.* In a prosecution for conspiracy to extort money by means of threats or intimidation it is not proper to give an instruction stating the abstract proposition that it is illegal for any person or persons, by force or intimidation, to compel one to do or refrain from doing any act which he has a right to do, but an instruction that any contract is void which is entered into through fear of resulting injury to person or property by unlawful acts may be given if based upon the evidence.

6. SAME—*when instruction may refer to union labor in prosecution for conspiracy to extort money.* Where defendants charged with conspiracy to extort money from the proprietors of a lawful business through threats of strikes and boycotts attempt to justify or excuse their acts by reason of their performance of duties as officials of labor unions, it is proper to instruct the jury that no labor union has a right to levy and collect a fine against a person not belonging to the union by inducing his men to quit his employ and that a conspiracy to accomplish such end is a violation of the criminal law.

7. SAME—*alleged errors in instructions not argued in Appellate Court are waived.* In the Supreme Court, on writ of error to the Appellate Court, plaintiffs in error cannot complain of the giving of any instructions which were not argued as erroneous in their briefs in the Appellate Court.

WRIT OF ERROR to the Third Division of the Appellate Court for the First District;—heard in that court on writ of error to the Criminal Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding.

WILLIAM E. RODRIGUEZ, (THOMAS E. SWANSON, of counsel,) for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and VIRGIL L. BLANDING, (HENRY T. CHACE, JR., EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Mr. JUSTICE HEARD delivered the opinion of the court:

Plaintiffs in error, together with Gus Rath, were indicted by the grand jury of Cook county at the December, 1919, term. The indictment consisted of six counts, the first three of which charged the defendants and other persons to the grand jury unknown with conspiring to extort money from three brothers doing business as Stamos Bros. in South Chicago, and conspiring to prevent them from conducting their business as a restaurant by means of boycott, and that defendants obtained the sum of $1000 from them by means of the boycott. In the last three counts the defendants were charged with conspiring with divers persons unknown, to unlawfully interfere with the business of large numbers of individuals, firms and corporations engaged in the bakery, restaurant, grocery, meat, general merchandise and other businesses in order to extort money. Each of the counts alleged that the conspiracy existed on November 15, 1919, and for a long time prior thereto. Pleas of not guilty having been entered, a jury trial was had, which resulted in the sentence of plaintiffs in error to the penitentiary for an indeterminate term and to pay a fine of $2000 each. The defendant Rath was sentenced to pay a fine of $1000. The record was taken to the Appellate Court for the First District upon writ of error, and the judgment of the trial court was there affirmed. The record is now before us upon writ of error.

The evidence tended to show that the alleged conspiracy was entered into and overt acts in pursuance thereof committed as early as April, 1919, and that such overt acts continued thereafter until October, 1919. Plaintiffs in error

contend that the verdict and judgment against them are
contrary to law because up until July 1, 1919, the statutory
provision was that one convicted of conspiracy could be im-
prisoned in the penitentiary for a period not to exceed five
years, and under that law the jury fixed the period of pun-
ishment, and it is argued that the evidence is such as to
show that the conspiracy in this case was entered into as
early as April, 1919, when the former law as to the punish-
ment for a conspiracy was in effect, and that any acts which
may have followed should be considered merely as a con-
tinuance of the initial conspiracy. Conspiracy is a contin-
uous offense, and the time of conspiring is to be measured
from the commission of the last overt act in pursuance of
the conspiracy and not merely from the origin of the con-
spiracy. (*People* v. *Blumenberg, 271* Ill. 180; *Cooke* v.
*People,* 231 id. 9.) The evidence in the case having shown
overt acts committed by plaintiffs in error after July 1, 1919,
they were properly sentenced under the law of July 1, 1919.

It is contended by plaintiffs in error that the court erred
in admitting the testimony of the witnesses Gendek, Nagoda,
Young and Cheske, who testified to threats and extortionate
demands made upon them by some of the plaintiffs in error,
and who likewise testified to payments of money to some
of the plaintiffs in error as the result of threats of violence.
Objection is made that the court erred in admitting the tes-
timony of certain other witnesses who testified to circum-
stances tending to prove the existence of the conspiracy on
the ground that this testimony did not involve all of the
defendants, and that the witnesses did not testify that they
had ever paid anybody any money or that they had ever
been asked for any money. To be competent in a conspiracy
case where the charge is that the conspiracy was formed for
the purpose of extorting money, it is not necessary that
the evidence show that each defendant was paid money or
that every witness was required to pay money. All of the
evidence above mentioned tended to show a concert of action

along a given line, or action by an individual plaintiff in error which in concert with a same course of conduct by another plaintiff in error was designed apparently for the common end complained of, and such evidence was therefore competent.

It is contended by plaintiffs in error that there was no evidence of concerted action or agreement between the defendants. The evidence does show that at some of the times overt acts were committed three or more of the plaintiffs in error were present. From the very nature of the case the evidence admitted in proof of the charge of conspiracy is largely circumstantial. While it is true that a common design is the essence of a conspiracy, it is not necessary to prove that the plaintiffs in error actually came together and agreed to unite in such a design or to engage in a common effort to execute it. It is only necessary to show that the plaintiffs in error, either by acting together or separately, pursued a course tending toward the accomplishment of the object of which complaint is made. It makes no difference whether the evidence shows that the various plaintiffs in error employed the same or different means, or that one plaintiff in error performed one act and another some other act with a view to attaining the same unlawful object, for in either case the jury will be justified in concluding that they were engaged in a conspiracy to attain such object. In such case every person involved in a conspiracy is deemed, in law, a party to all the acts done by any of the others in furtherance of a common design. *Spies* v. *People,* 122 Ill. 1; *Ochs* v. *People,* 124 id. 399; *People* v. *Lloyd,* 304 id. 23.

It is contended by plaintiffs in error that the judgment is not supported by the evidence in the case. James Stamos testified that he and his brothers were in the hotel, bakery and restaurant business and had been located in South Chicago for twenty years; that in the latter part of April, 1919, their contract with the waitresses ran out and they

had a strike; that the defendant Pipes and a number of
delegates from the union came to their place of business on
May 1; that there were fifteen or twenty of them; that
Mrs. Pipes presented a contract which she requested the
witness to sign; that he stated that he could not do so as
he belonged to the Restaurant Association, and he sug-
gested to her that she go and see the president of the as-
sociation; that she replied that she did not have to, and
told the witness that if he did not sign the contract she
was going to take away the union card that was·somewhere
in view; that the witness replied that that was up to her,
whereupon she came inside the counter, picked up the card
and called the girls who were at work in the place to walk
out, which they did, after which she went over to another
restaurant operated by the Stamos brothers and called out
the employees there, on a strike; that the following morn-
ing there was a general strike at all the restaurants in
South Chicago and the proprietors of these restaurants
closed them; that his restaurants were picketed; that later
he and his brothers went to see Mrs. Pipes, and she said
that she had nothing to do with the situation,—that they
would have to see the defendant Vind, who was the presi-
dent of the Trades and Labor Assembly; that two or three
days later they went to the place where Vind was, and Mrs.
Pipes came to the door first and said that their committee
did not desire to see all the delegation that was present but
only the Stamos brothers, and therefore the latter were ad-
mitted alone; that he saw the defendants Vind, Blevins and
Boatman, and also a stranger he did not know; that Vind
stated that "you fellows come to this town and make all
kinds of money; you get rich and never think anything
about the unions;" that one of the brothers replied that
they had always recognized the unions, whereupon Vind
said, among other things, "You fellows got to do something
or get out of town; one of the two;" that one of the
brothers replied that they had done nothing to cause them

to leave town; that Vind then said, "You know these strikes cost big money," whereupon he took out a piece of paper and put down three ciphers, with a space left in front of them, and handed it to one of the brothers, who looked at it and then asked Vind what he meant, and Vind replied; "Can't you read it? It is just exactly what I mean;" that the brother then handed the paper to the witness, who remarked that it meant money, and the witness then asked that he and his brothers be permitted to retire to another room for a few moments, which they did; that very shortly they returned to the other room and offered to pay $1000; that Vind said the committee was to have a meeting that night or the next day, and if they were willing to accept that amount they would see the Stamos brothers again; that this occurred on Saturday; that on the following Monday they went back to the same place with $1200; that on this occasion Vind, Blevins and Rath, as well as the stranger referred to, were there; that the brother who had the money was told to put it down on the table, and he did so, whereupon Vind took a hat and placed it over the money and it was left there; that at the Saturday conference Vind had demanded that the Stamos brothers sell out; that they did sell out two of their places of business; that at the Monday conference the defendants there present directed the Stamos brothers to call in their successors, and they went to the next room and telephoned them to come over to the South Chicago Club, where these transactions were had; that they came over and met Vind, Mrs. Pipes and Blevins. The other Stamos brothers testified to the same general effect. There are some differences in their descriptions of these conferences, but in substance they each corroborate the others.

Without referring to the evidence in further detail, suffice it to say that there is ample evidence in the case which, if believed by the jury, is sufficient to show that each one of the plaintiffs in error is guilty of conspiring together in

manner and form as charged in the indictment, and that
the overt acts were committed by them in pursuance of such
conspiracy up until October, 1919. While plaintiffs in er-
ror, as witnesses, denied much of the incriminating evidence,
yet the jury saw and heard the witnesses and were fully
warranted by the evidence in finding each one of the plain-
tiffs in error guilty.

Plaintiffs in error contend that the court erred in giv-
ing, at the request of the People, the following instruction:

"The court further instructs you that in order to make
a valid contract it must be entered into willingly and must
express the intention of the parties. Any contract which is
the result of coercion or intimidation which induced a per-
son to enter into it by fear of resulting injury to himself
or to his property by unlawful acts is not a contract and
has no force in law. The court by this instruction does
not mean to intimate anything as to what are or what are
not the facts in this case."

From the People's evidence in the case it appears that
plaintiffs in error, in attempting to compel the restaurant
owners to sign new contracts, picketed the places of busi-
ness, kept supplies from being delivered, broke windows,
exploded bombs and made threats, while plaintiffs in error
claimed at the trial that any money paid over was paid vol-
untarily and any contract signed was signed voluntarily.
The giving of this instruction was therefore not improper.

It is next contended that the court erred in giving to the
jury, for the People, this instruction:

"The court instructs the jury that no labor union has
any lawful right to levy a fine against a person not belong-
ing to their union, and any attempt to levy a fine against
such person and to collect the same by inducing his men to
quit his employ, is illegal, and a conspiracy to accomplish
this end is a violation of criminal law of this State."

Plaintiffs in error's contention is that there is no evidence in this case of any fine being levied against any person, nor of any attempt to collect such fine by inducing employees to quit until the fine was paid, nor is there any count in the indictment charging union labor with having done that particular thing. While it is true that there is no count in the indictment charging union labor with anything and that union labor was not upon trial, plaintiffs in error attempted to justify or excuse their acts by reason of their performance by them as officials of labor unions. While union labor was in nowise responsible for the unlawful acts of plaintiffs in error, this instruction was based upon the evidence in the case, and its giving was not error.

It is contended by plaintiffs in error that the court erred in giving to the jury, on behalf of the People, the following instruction:

"The court instructs the jury that it is illegal and unlawful for any person or persons by force or injury tending to violence, or by intimidation to compel a person against his will to do or refrain from doing any act which under the law he has a legal right to do."

While this instruction is a mere abstract proposition of law and should not have been given, we do not consider that the judgment should be reversed on that account.

Other instructions are complained of, but from an inspection of plaintiffs in error's briefs in the Appellate Court, which have been filed in this court, it does not appear that those instructions were there argued, and objections to them, therefore, cannot be considered here.

Finding no reversible error in the record the judgment of the Appellate Court is affirmed.     *Judgment affirmed.*