(No. 63863.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. MARY JOYCE MARTIN, Appellant.

*Opinion filed February 11, 1988.*

RYAN, J., joined by MORAN, C.J., and MILLER, J., dissenting.

Howard Lee White, of Schwarz, Self, White, Emons & McDonald, of Jerseyville, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Mark L.

Rotert and Kenneth A. Fedinets, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE SIMON delivered the opinion of the court:

Following a bench trial in the circuit court of St. Clair County, the defendant, Mary Joyce Martin, was convicted of involuntary manslaughter for the death of Kevin Bagent. In sentencing the defendant to the maximum statutory penalty for the offense of involuntary manslaughter—five years' imprisonment—the trial judge considered as a factor in aggravation that the defendant's conduct caused serious harm to Bagent, resulting in his death. (See Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2.) The appellate court, in an unpublished order (87 Ill. 2d R. 23), affirmed the defendant's conviction and sentence. (142 Ill. App. 3d 1178.) One justice dissented on the ground that the trial judge, in delivering the sentence, failed to consider all the factors in mitigation listed in section 5—5—3.1 of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.1). We granted the defendant's petition for leave to appeal pursuant to Rule 315 (94 Ill. 2d R. 315(a)). The issue presented for our review is whether the trial court erred by considering as a factor in aggravation that the defendant's conduct caused serious bodily harm resulting in the victim's death.

At about 6 a.m. on March 10, 1984, the victim and two friends, Mark Uhlemeyer and Michael Marshall, left the Roxy Tavern in Brooklyn, Illinois, and went across the street to the Rub-A-Dub massage parlor, where the defendant was employed as a masseuse. They were drunk. Marshall entered the parlor followed several minutes later by the victim and Uhlemeyer. According to Uhlemeyer, Marshall emerged from the rear of the establishment with a woman who was not the defendant. The woman was angry and she stated: "I am not going

to give him a massage. I wouldn't give him a massage for $1,000 because that is not what he wants."

The manager heard the interchange and asked the group to leave. Both Uhlemeyer and the victim left the parlor and waited outside for Marshall, who was talking to the manager. According to Uhlemeyer, the manager backed Marshall towards the parlor's front door and pushed him outside. The victim observed this and ran back inside the parlor. He approached the manager and said: "Hey, don't push my friend." A fight broke out. While the fight was taking place, the manager instructed the defendant, who was standing nearby, to get the shotgun from the office. The defendant retrieved the gun and brought it back to the scene of the fight. Although it is not clear whether she pulled the trigger, the gun discharged, killing the victim. The defendant testified at trial that she never intended the gun to go off but had merely meant to scare the victim. She also testified that after a female employee's forcible abduction from the parlor the month before, the manager had brought the shotgun to the office for protection.

At the sentencing the State offered in aggravation that the defendant's conduct caused serious bodily harm to the victim resulting in death, and that a sentence was necessary to deter others from committing a similar offense. (See Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2.) The defense counsel responded by noting numerous statutory mitigating factors. (See Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.1.) He emphasized that the defendant did not intend her conduct to cause serious harm. He stressed that although she had failed to establish an affirmative defense to involuntary manslaughter, there were substantial grounds tending to excuse or justify her conduct. In addition, counsel noted that the offense was induced by another, namely the defendant's employer; that the defendant had no prior criminal his-

tory; that her conduct was a result of circumstances unlikely to recur; and that she was no longer a masseuse and was presently gainfully employed as a salesperson. Finally, counsel called the court's attention to the presentence investigation report, which concluded that: "Since the defendant *** has been employed on a full time salaried basis ***, no specific rehabilitative resource consideration will be suggested."

In imposing sentence, the trial judge stated that he had considered the presentence investigation report and the statutory factors in aggravation and mitigation. He then denied probation and found in aggravation "that in committing the felony the defendant inflicted serious bodily injury to another resulting in death, and that a sentence [was] necessary to deter others from committing the same crime." In mitigation the judge found only that the defendant had no prior history of any delinquent or criminal activity. He then imposed the maximum statutory penalty for the crime of involuntary manslaughter.

On the printed document on which the trial judge marked the relevant statutory factors considered before imposing the sentence, the trial judge added the phrase "resulting in death" and then checked the first factor in aggravation listed on the document. Originally, this factor read: "In committing the felony defendant inflicted/ attempted to inflict serious bodily injury to another." The judge corrected it in his own handwriting to read: "In committing the felony the defendant inflicted serious bodily injury to another *resulting in death*." (Emphasis added.) The judge also checked the following aggravating factor: "The sentence is necessary to deter others from committing the same crime." On the document listing the factors in mitigation only the factor indicating that the defendant had no prior history of delinquent or

criminal activity was checked. The judge signed and dated these documents.

The State argues that the defendant waived the issue of whether the trial court erred in considering the harm to the victim as an aggravating factor to an involuntary manslaughter conviction. According to the State, since the defendant failed to raise the issue before the trial court or the appellate court, she is barred from raising it before this court.

Although the general rule in Illinois is that failure by a defendant to object at trial or to raise an issue in the appellate court constitutes a waiver, it "is well established that in the interest of justice, a reviewing court may consider *all* questions which appear to be plain error or affect substantial rights of a party." (Emphasis added.) (*People v. Henderson* (1970), 119 Ill. App. 2d 403, 405; see also 107 Ill. 2d R. 615.) The trial judge's consideration of the fact that the defendant's conduct caused serious harm to Bagent, resulting in his death, as a factor in aggravation in sentencing clearly affected the defendant's fundamental right to liberty (see *Ingraham v. Wright* (1977), 430 U.S. 651, 673-74, 51 L. Ed. 2d 711, 731-32, 97 S. Ct. 1401, 1413-14) and impinged on her right not to be sentenced based on improper factors (see *People v. Conover* (1981), 84 Ill. 2d 400, 405 (sentence based on improper factors will not be affirmed unless the court can determine from the record that the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence)).

The plain error doctrine may be used in reviewing a sentence if the evidence is closely balanced. (See *People v. Garcia* (1983), 97 Ill. 2d 58, 87.) The evidence presented at the sentencing hearing was not simply closely balanced, it strongly favored leniency for the defendant. Aside from the harm to the victim, the only other aggra-

vating factor considered by the trial court was that the sentence was necessary to deter others. This factor, however, has, at best, marginal applicability to the circumstances surrounding the offense. The defendant was convicted of involuntary manslaughter—of "unintentionally kill[ing] an individual without lawful justification" (Ill. Rev. Stat. 1985, ch. 38, par. 9—3). Since it is exceedingly difficult to deter unintentional conduct, an enhanced penalty would have very little, if any, deterrent effect on potential offenders.

Moreover, there was substantial mitigating evidence, some of which the trial court improperly decided not to consider. The only factor the court considered in mitigation was that the defendant had no prior criminal history. The numerous other mitigating factors that the court should have considered include: the offense was induced by another (her employer), her conduct was a result of circumstances unlikely to recur, and she was no longer a masseuse and was gainfully employed as a salesperson. In addition, the presentence investigation report did not suggest a specific rehabilitative-resource consideration because the defendant was then employed on a full-time, salaried basis. The evidence at the sentencing hearing weighed heavily in the defendant's favor, and we therefore consider it appropriate to apply the plain error rule.

Our recent decision in *People v. Saldivar* (1986), 113 Ill. 2d 256, which was announced after the defendant in the instant case was sentenced, makes it clear that the court's consideration of Bagent's death as an aggravating factor was a plain error. In *Saldivar* we held that the court erred when it considered the victim's harm as an aggravating factor in imposing sentence for voluntary manslaughter because it focused solely on the end result of this harm—the victim's death—which is implicit in that offense. Since the legislature had already taken the

victim's death into account when it set the range of permissible penalties for the crime, we concluded that it would be improper to consider it once again as a justification for imposing a greater penalty. Had the legislature intended the death to be considered a second time, this intent would have been more clearly expressed. *People v. Saldivar* (1986), 113 Ill. 2d 256, 267-68; see also *People v. Conover* (1981), 84 Ill. 2d 400 (court found it improper to consider as an aggravating factor in a burglary conviction that the defendant was compensated for the crime through the proceeds from the burglary); *People v. Brownell* (1980), 79 Ill. 2d 508, 526 (That the victim would have been an eyewitness against the defendant held not to be a factor in aggravation justifying the death penalty. "Otherwise, *** this aggravating factor could apply in every prosecution for murder where another offense contemporaneously occurs because the victim could have been a witness against the defendant").

We reached this decision in *Saldivar* in spite of the fact that at the sentencing hearing the defendant's attorney did not specifically object to the consideration of the victim's death as an aggravating factor but, rather, simply noted that by definition voluntary manslaughter involves a homicide. (*People v. Saldivar* (1986), 113 Ill. 2d 256, 266.) We noted that it was not necessary in order to raise the error on appeal for counsel to interrupt the judge while he was explaining the sentence being imposed and point out that wrong factors in aggravation were being considered. (*People v. Saldivar* (1986), 113 Ill. 2d 256, 266.) We conclude that the trial court in the instant case committed a clear error that affected substantial rights of the defendant.

The State maintains that even if the defendant has not waived the issue, *Saldivar* can be distinguished from this case because the trial court here viewed only the physical manner, the force, the defendant used in caus-

ing the victim's death, rather than the end result of that force—the death itself—when it imposed the sentence. Because we said in *Saldivar* that the degree of harm "may be considered as an aggravating factor in determining the exact length of a particular sentence, *even in cases where serious bodily harm is arguably implicit in the offense for which a defendant is convicted*" (emphasis in original) (*People v. Saldivar* (1986), 113 Ill. 2d 256, 269), the State argues that the court did not err when it sentenced the defendant.

While the State accurately quotes a portion of our opinion in *Saldivar*, it fails to characterize accurately the reason the trial judge in this case gave for imposing the maximum penalty. Before imposing the sentence he explicitly stated that "in committing the felony the defendant inflicted serious bodily injury to another resulting in death." In addition, the judge added the phrase "resulting in death" to the signed document on which he indicated the aggravating factors he considered in imposing the sentence. But even if we were to disregard these statements, it remains abundantly clear that the trial court focused solely on the victim's death in sentencing the defendant since there was *no extreme degree of harm* the court could have considered. The defendant's gun was unintentionally discharged, firing a single shot which killed the victim. The degree of force—the brutality—which, as we observed in *Saldivar*, might justify an increased sentence even though death is implicit in the offense, simply is not present in this situation. For these reasons, we conclude that the trial judge improperly considered the victim's death as an aggravating factor in sentencing the defendant.

Having determined that the trial court erred in considering the harm to the victim as an aggravating factor, the next question is whether the cause should be remanded for resentencing. The State argues that under

our holding in *People v. Bourke* (1983), 96 Ill. 2d 327, re-sentencing is unnecessary because the weight accorded to the improper factor was so insignificant that it failed to result in an increased sentence.

*Bourke,* however, is distinguishable. There the State never mentioned the improper factor in its closing argument at the sentencing. (*People v. Bourke* (1983), 96 Ill. 2d 327, 333.) Instead, the State in *Bourke* stressed the "defendant's 'flagrant violations of the terms of probation,' [which was] the same factor the court emphasized [when it imposed the sentence]." (96 Ill. 2d 327, 333.) And, the defendant in *Bourke* was not sentenced to the statutory maximum for his offense.

In contrast, not only was the defendant in this case given the maximum penalty, but also the State in requesting the maximum sentence emphasized the improper factor—the victim's death. Given the record in this case, we cannot conclude, as this court did in *Bourke,* that the judge's reliance on the improper factor was so insubstantial that it did not affect the length of the sentence.

The State argues that the other aggravating factor the court considered—the need to deter others from committing the same offense—justifies the enhanced penalty in this case. In *People v. White* (1986), 114 Ill. 2d 61, we concluded that a remand was unnecessary because of the court's consideration of other aggravating factors. The defendant in *White* was convicted of aggravated battery of a child. In imposing the penalty, the court improperly viewed the victim's young age as an aggravating factor; however, the court also properly considered three other aggravating factors and noted that the recommendation contained in the presentence investigation report for probation was guarded. The court in *White* sentenced the defendant to one year beyond the statutory minimum for the offense. Because the sentence

imposed in *White* was not severe, and because the remaining factors considered in aggravation, together with the presentence report, justified the penalty, we held that a remand was unnecessary.

The same reasoning is not applicable in this case. Rather than sentencing the defendant here to one year beyond the minimum penalty, she received the stiffest penalty provided by law. More importantly, however, in imposing this penalty the judge considered not three other factors in aggravation but only one—deterrence—and as explained above, this one factor has, at best, marginal applicability to circumstances surrounding the offense. In addition, as described above, there were substantial mitigating factors. We therefore conclude that the maximum penalty cannot be justified in this case.

In view of the improper factor that the trial court considered and its failure to recognize relevant factors in mitigation, we remand this cause to the circuit court for resentencing. The judgment of the appellate court is affirmed in part and reversed in part, and the judgment of the circuit court is affirmed in part and vacated in part.

*Appellate court affirmed in part and reversed in part; circuit court judgment affirmed in part and vacated in part; cause remanded.*

JUSTICE RYAN, dissenting:

The majority found that the trial court considered improper factors in sentencing defendant and remanded the cause to the circuit court for resentencing. As noticed in the opinion, the question of considering an improper factor in aggravation was not properly raised in the trial court. The opinion, however, avoided the waiver rule that is usually invoked because of such failure by applying the plain error doctrine. The opinion never ad-

dressed another waiver principle which the State asserted, that is, that the defendant never raised the issue upon which the remandment is based in the appellate court.

The State asserts that the defendant does not deny that the claim that the trial court improperly relied on an aggravating factor was not raised by the defendant in the appellate court. The opinion acknowledges that the State raised the issue of waiver because of this failure. Instead of addressing this issue the opinion relies on the plain error doctrine as applied by the appellate court in *People v. Henderson* (1970), 119 Ill. App. 2d 403, and our Rule 615 (107 Ill. 2d R. 615). *Henderson* involved an application of the plain error doctrine in the appellate court after a failure to raise a question in the appellate court briefs. That is not the question before us. Also, our Rule 615 only authorizes a court of review to notice plain errors or defects affecting substantial rights that were not brought to the attention of the trial court. That also is not the question before us.

Permitting the defendant to raise an issue in this court after his failure to raise it in the appellate court allows a defendant to try his case on one theory in the appellate court and if he loses to try his case on a different theory in this court. In effect such a procedure permits a direct appeal from the trial court to this court as to the issue not raised in the appellate court. This is contrary to the provisions of article VI, sections 4(b) and 6, of the Illinois Constitution of 1970 and our Rule 302 (107 Ill. 2d R. 302). If the error relied on by the majority is in fact plain error or if substantial rights were affected by this error, why then was the issue not raised in the appellate court?

Our Rule 341(e)(7) (107 Ill. 2d R. 341(e)(7)) provides that points not argued in the appellant's brief are waived. Thus the defendant in our case, by not raising

the issue relied on by the majority opinion in the appellate court, has waived the alleged error. This court has held on numerous occasions that the failure of a party to present an alleged error to the appellate court precludes him from asserting that ground for consideration in this court as to all matters not jurisdictional. *People v. Fink* (1982), 91 Ill. 2d 237, 241; *People v. Caldwell* (1968), 39 Ill. 2d 346, 355; *Williams v. Consumers Co.* (1933), 352 Ill. 51, 59; *Tegtmeyer v. Tegtmeyer* (1932), 348 Ill. 434, 440; *People v. Davis* (1925), 318 Ill. 179, 182; *People v. Garwood* (1925), 317 Ill. 578, 579-80; *People v. Walczak* (1924), 315 Ill. 49, 57.

I would hold that because the defendant failed to raise in the appellate court the question of the trial court's error in relying on improper aggravating factors, the issue has been waived and should not be considered in this court. I would therefore affirm. If the failure of the defendant's attorney to raise this issue in the appellate court involves a question of effective assistance of counsel, that question can be dealt with in a post-conviction hearing. Resolving this issue involves different considerations from those involved in determining the question now before this court.

MORAN, C.J., and MILLER, J., join in this dissent.