NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220681-U

NO. 4-22-0681

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 10, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| MARQUAN GLEN GLOVER, | ) | No. 21CF1777 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Joseph G. McGraw, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Cavanagh and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed defendant's five-year prison sentence for resisting a peace officer causing injury because the trial court did not apply a double enhancement and the sentence was not excessive. In accordance with recent legislation, the appellate court reduced defendant's term of mandatory supervised release from one year to six months.

¶ 2    Following a jury trial in the circuit court of Winnebago County, defendant, Marquan Glen Glover, was convicted of resisting a peace officer causing injury (720 ILCS 5/31-1(a-7) (West 2020)). The trial court sentenced defendant to five years in prison, followed by a one-year term of mandatory supervised release (MSR). Defendant appeals, arguing that (1) the court imposed an improper double sentencing enhancement, (2) the five-year prison sentence is excessive, and (3) the MSR term should be reduced to six months. For the reasons that follow, we reduce defendant's MSR term to six months but affirm the judgment in all other respects.

¶ 3                                    I. BACKGROUND

¶ 4       At defendant's trial, the State proceeded on two charges: aggravated battery (720 ILCS 5/12-3.05(d)(4) (West 2020)) and resisting a peace officer causing injury (720 ILCS 5/31-1(a-7) (West 2020)). Officer Ashley Calhoun of the Rockford Police Department was the alleged victim in both counts.

¶ 5       Calhoun was the only witness. She testified as follows. Around 11:45 a.m. on September 13, 2021, she was typing reports in her squad car in a middle school parking lot. A car driven by Latisha Stewart drove up quickly toward Calhoun. Stewart got out of her car, yelling that defendant had a warrant and that she wanted him out of her car. Although Calhoun attempted to deescalate the situation, Stewart remained angry, and defendant was reluctant to speak with Calhoun. Eventually, while Stewart was standing outside her car, defendant moved from the passenger's seat of that car to the driver's seat. Stewart then approached defendant and struggled with him for control of the car. According to Calhoun, Stewart was "almost sitting on" defendant, with one leg inside the car and the other outside. Defendant was "trying to change the gearshift," whereas Stewart was "trying to get the keys out of the car." Calhoun heard the car's engine revving, though she did not know whose feet were on the pedals. As the car bounced backward and forward, Calhoun told defendant and Stewart to stop.

¶ 6       Eventually, the car "revved back," hitting Calhoun with the door and dragging Stewart about 15 to 20 feet. Calhoun "pull[ed] on" her service weapon, thinking she was going to shoot defendant because he was dragging Stewart on the road. Calhoun yelled at defendant, "stop, you're dragging her." Defendant immediately stopped the car. However, defendant then put the car in "drive," at which point Stewart let go of the car. Defendant then made a "sharp left turn" and sped away. In doing so, defendant struck Calhoun's leg with the car's rear driver's side fender

and ran over Calhoun's foot with a tire. Defendant briefly got out of the car and yelled something before reentering the car and leaving the parking lot.

¶ 7 Calhoun then walked over to check on Stewart. Stewart complained of a foot injury, though the nature and extent of that injury were not detailed at trial. Calhoun testified that she felt soreness and pain in her own foot on the day of the incident, and she experienced some limping. Calhoun decided to see a doctor the next day when her foot was "very, very sore." According to Calhoun, her foot was bruised, a little swollen, and "very painful." Neither X-rays nor any pictures depicting Calhoun's injuries were offered at trial. Calhoun was asked at trial why she did not take pictures of her injuries, and she testified that she had gotten used to sustaining injuries as a police officer.

¶ 8 The jury acquitted defendant of aggravated battery but found him guilty of resisting a peace officer causing injury, a Class 4 felony. 720 ILCS 5/31-1(a-7) (West 2020). Due to his criminal record, defendant was eligible for an extended-term prison sentence of up to six years. See 730 ILCS 5/5-4.5-45(a) (West 2020). The parties agreed the applicable MSR term was one year.

¶ 9 Defendant's presentence investigation report (PSI) showed the following. Defendant was 24 years old, unmarried, and had no children. He identified Stewart as his "significant other," and he described their relationship as " 'perfect.' " Defendant was expelled from high school and never obtained his general equivalency diploma. Defendant's work history was sporadic, and he left multiple jobs due to his arrests. Defendant had a history of substance abuse with alcohol and marijuana.

¶ 10 According to the PSI, defendant, as a minor, was adjudicated delinquent for theft, robbery, and mob action. He was unsuccessful on probation, and he ultimately spent time in the

Illinois Department of Juvenile Justice. As an adult, defendant had convictions for multiple counts of domestic battery, multiple counts of aggravated battery, and resisting a peace officer. Defendant had served a two-year prison sentence for one of his domestic battery convictions. Defendant had a history of not complying with the conditions of his probation.

¶ 11　　　　According to the PSI, defendant's younger brother was murdered while defendant was incarcerated awaiting trial in the present case. Defendant also reported that his mother "needs him" because she has heart problems. Defendant stated that since his arrest in the present case, he learned to think before reacting. Defendant looked forward to getting married, starting a business, obtaining a commercial driver's license, and "talk[ing] to people who need help."

¶ 12　　　　At the sentencing hearing, neither the State nor defendant presented any evidence. However, defendant submitted supportive letters from his family.

¶ 13　　　　The prosecutor requested a prison sentence "at or around the 5 year mark." The prosecutor emphasized the seriousness of the offense, including that defendant "chose to maneuver a vehicle to evade police" in a school parking lot. According to the prosecutor, defendant showed "no concern as to who around was going to be injured," as he dragged Stewart and ran over Calhoun's foot. The prosecutor argued that Calhoun "testified at great length and in persuasive emotionality as to the impact this had on her as to the danger it presented." The prosecutor asserted that defendant's conduct posed a "great risk" and "deserves strong deterrent value in sentencing."

¶ 14　　　　The prosecutor argued that three aggravating sentencing factors applied. See 730 ILCS 5/5-5-3.2(a)(1) (West 2020) ("the defendant's conduct caused or threatened serious harm"); 730 ILCS 5/5-5-3.2(a)(3) (West 2020) ("the defendant has a history of prior delinquency or criminal activity"); 730 ILCS 5/5-5-3.2(a)(7) (West 2020) ("the sentence is necessary to deter others from committing the same crime"). As to aggravating factor (a)(1), the prosecutor said: "It

caused injury for an individual and it certainly threatened serious harm both at the location in which this was conducted and the recklessness with which he drove away as testified to by Officer Calhoun."

¶ 15 Defense counsel requested a sentence of "time served, followed by probation." According to counsel, seven months of incarceration was "not an insignificant consequence." Counsel emphasized that Calhoun was not seriously injured. Counsel asserted, "So it could have been worse. Thankfully, it was not." Furthermore, counsel mentioned that defendant regretted being incarcerated when his brother was murdered. In counsel's view, it was not worth wasting taxpayer money sending defendant to prison "when he's already faced pretty significant consequences of having his liberty deprived for almost a year [*sic*] and having unfortunately lost his brother while he was locked up inside." Counsel also noted that defendant's mother had heart problems, and defendant "would like to be out to care for her."

¶ 16 Defense counsel argued that mitigating factor (a)(2) applied. See 730 ILCS 5/5-5-3.1(a)(2) (West 2020) ("The defendant did not contemplate that his criminal conduct would cause or threaten serious physical harm to another."). On that point, counsel proposed that defendant wanted to evade the police but did not intend to harm anyone. Defense counsel also argued that "defendant's criminal conduct was the result of circumstances unlikely to recur." 730 ILCS 5/5-5-3.1(a)(8) (West 2020). To that end, counsel characterized the facts of the case as "somewhat of a freak incident," as defendant panicked while "trying to get away" from the scene.

¶ 17 Defense counsel further argued that mitigating factor (a)(9) applied. See 730 ILCS 5/5-5-3.1(a)(9) (West 2020) ("The character and attitudes of the defendant indicate that he is unlikely to commit another crime."). With respect to this factor, counsel focused on defendant's statements in the PSI about desiring to get married and start a business. Finally, defense counsel

contended that mitigating factor (a)(10) applied. See 730 ILCS 5/5-5-3.1(a)(10) (West 2020) ("The defendant is particularly likely to comply with the terms of a period of probation."). Although counsel acknowledged that defendant's criminal history might not support this factor, counsel argued that defendant was a young man who had "made numerous poor decisions" but was "looking towards the future." Defense counsel added that defendant had "strong family support," as indicated by the letters submitted on his behalf.

¶ 18 Defendant offered a brief statement in allocution. He apologized for his actions and said he "didn't mean to hurt" anybody. Defendant added: "I'm a changed man now. And I want to do better, succeed in life, *** be there for my family, *** and make better decisions in life."

¶ 19 The trial court began its sentencing ruling by stating, "To the extent I refer to the facts of the case, it is not as an enhancement, but only as it relates to the nature and circumstances of the offense." The court added that it had considered all relevant aggravating and mitigating factors, the trial evidence, the parties' arguments, the PSI, defendant's character letters, defendant's statement in allocution, and defendant's rehabilitative potential. The court also considered the four purposes of sentencing: retribution, deterrence, incapacitation, and rehabilitation.

¶ 20 The trial court found that mitigating factor (a)(1) did not apply. See 730 ILCS 5/5-5-3.1(a)(1) (West 2020) ("The defendant's criminal conduct neither caused nor threatened serious physical harm to another.") The court prefaced its remarks by stating: "I'm not saying this as an enhancement because he's found guilty of causing injury." The court then recounted the trial evidence that defendant struggled with Stewart for control of the car while the engine revved and the car jerked violently. The court said that "it was just a matter of time before the car lurched forward or backwards in a way that either struck somebody or injured somebody." The court noted

that defendant's struggle with Stewart was "ongoing" rather than "just a snap decision" by defendant. The court further recalled that Calhoun pleaded with defendant to stop but all defendant "could think about was getting out of there without being arrested." According to the court, defendant was "driving the car in a reckless and dangerous manner" when he struggled with Stewart, even as Calhoun tried to get defendant's attention and "get out of the way." For these reasons, the court found mitigating factor (a)(1) did not apply.

¶ 21 The trial court determined that mitigating factor (a)(2) did not apply. See 730 ILCS 5/5-5-3.1(a)(2) (West 2020) ("The defendant did not contemplate that his criminal conduct would cause or threaten serious physical harm to another."). The court described it as "a miracle" that Calhoun was not injured more seriously, as defendant "gave no regard whatsoever" to Calhoun's and Stewart's safety.

¶ 22 The trial court also determined that six other mitigating factors did not apply. See 730 ILCS 5/5-5-3.1(a)(3)-(7), (10) (West 2020). Specifically, the court noted that defendant did not act under strong provocation, there were not substantial grounds tending to excuse or justify defendant's conduct, defendant's conduct was not induced or facilitated by someone else, and there was "no discussion of compensating the victim." The court also recognized that defendant had a "significant history of prior delinquency and criminal activity," and defendant had "not led a law abiding life for a substantial period of time." Additionally, the court determined that defendant's adult and juvenile records did not indicate he was likely to comply with probation. However, the court credited defendant for complying with the terms of a pretrial furlough the court had granted when defendant attended his brother's funeral.

¶ 23 The trial court then addressed the need for deterrence. The court explained:

"I see every day in this courtroom, individuals that show no respect for law enforcement. I don't know what happened over the years, but it's a huge problem in our community of people running from the police, not obeying orders, fighting the police, resisting arrest, driving in a crazy manner. It puts a whole community at risk."

The court stated it would remember Calhoun's "compelling" testimony "for a long, long time." The court recalled that Calhoun feared for her life and contemplated having to use deadly force to protect herself from defendant's driving. The court also noted that this incident occurred in a school parking lot. In the court's view, defendant wanted to get away from the police and "didn't care who [he] had to hurt to do it." The court "agree[d] with the prosecutor" that it was necessary "to impose a sentence to deter others." The court reiterated that it was "just a miracle" that defendant did not injure Calhoun more severely.

¶ 24 The trial court recognized that defendant expressed having goals. The court hoped defendant would pursue those goals in prison, including by not associating himself with "losers" who "blame everybody else for their circumstances." Ultimately, the court "agree[d] with the prosecutor on this case." The court sentenced defendant to 5 years in prison, with credit for 216 days served, to be followed by 1 year of MSR.

¶ 25 Defendant filed a motion to reconsider the sentence. Defendant argued the sentence was excessive and that the trial court failed to consider mitigating factors and defendant's rehabilitative potential.

¶ 26 The trial court denied defendant's motion. In explaining its ruling, the court emphasized that defendant's conduct was "extremely dangerous." The court again described the facts of the offense, including that defendant endangered both Calhoun and Stewart. The court

clarified that it was "only sentencing [defendant] for what [he] did to Officer Calhoun." The court added that it "mentioned the other facts of the case not as an aggravation, but as it relates to the nature and circumstances of the offense." The court also reiterated that it considered the relevant sentencing factors, including defendant's rehabilitative potential.

¶ 27    Defendant timely appealed.

¶ 28    II. ANALYSIS

¶ 29    A. Double Enhancement

¶ 30    Defendant first argues that the trial court applied an improper double enhancement by considering Calhoun's injury in aggravation at sentencing, as injury is an element of the charged offense. Defendant acknowledges he forfeited this issue by failing to raise it in the trial court. See *People v. Hillier*, 237 Ill. 2d 539, 544 (2010) ("It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required."). Defendant asks us to consider the issue pursuant to the second prong of the plain-error doctrine. The State responds that the court did not apply an improper double enhancement because the court appropriately commented on "the circumstances surrounding" the offense and Calhoun's injury.

¶ 31    To obtain relief pursuant to the plain-error doctrine, "a defendant must first show that a clear or obvious error occurred." *Hillier*, 237 Ill. 2d at 545. "In the sentencing context, a defendant must then show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Hillier*, 237 Ill. 2d at 545. The defendant bears the burden of persuasion to demonstrate plain error. *Hillier*, 237 Ill. 2d at 545. A defendant "cannot obtain relief on an unpreserved error under the plain-error doctrine if he would not have been entitled to relief on the same error if preserved."

*People v. Williams*, 2022 IL 126918, ¶ 49. Thus, the typical threshold inquiry is to ascertain whether any error occurred at all. *Williams*, 2022 IL 126918, ¶ 49.

¶ 32    Although a trial court has broad discretion to impose a sentence, a court may not consider as an aggravating sentencing factor something implicit in the offense. *People v. Abdelhadi*, 2012 IL App (2d) 111053, ¶ 9. In other words, an element of the charged offense cannot also serve as "a basis for imposing a 'harsher sentence than might otherwise have been imposed.' " *Abdelhadi*, 2012 IL App (2d) 111053, ¶ 9 (quoting *People v. Gonzalez*, 151 Ill. 2d 79, 83-84 (1992)). For example, if a court were sentencing a defendant for involuntary manslaughter, it would be improper for the court to enhance the sentence on the basis that the defendant's conduct resulted in a death, as death is inherent in the offense. See *People v. Martin*, 119 Ill. 2d 453, 461 (1988). "Such dual use of a single factor is often referred to as 'double enhancement.' " *Abdelhadi*, 2012 IL App (2d) 111053, ¶ 9 (quoting *Gonzalez*, 151 Ill. 2d at 85).

¶ 33    Nevertheless, "[a] trial court is not required to refrain from any mention of sentencing factors that constitute elements of the offense." *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 15. To that end, "a trial judge's commentary on the nature and circumstances of a defendant's crimes" does not necessarily constitute an improper double enhancement. *Sauseda*, 2016 IL App (1st) 140134, ¶ 15. Specifically, "even where serious bodily harm is arguably implicit in the offense of which the defendant is convicted," it is proper for the trial court to consider as aggravating factors the degree of harm, the manner in which that harm occurred, and the nature and circumstances of the offense. *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009). "In determining whether the trial court based the sentence on proper aggravating and mitigating factors, a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court." *Dowding*, 388 Ill. App. 3d at 943.

¶ 34    We determine the trial court did not apply a double enhancement. Unlike cases defendant cites where trial courts were found to have imposed double enhancements, the court here did not explicitly cite either harm or potential harm as aggravating factors. Rather, the court's discussion about harm and potential harm was in the context of explaining why certain mitigating factors *did not* apply.

¶ 35    Additionally, the trial court obviously was aware of the prohibition against double enhancements, as the court said its discussion of the facts of the case and its analysis of harm were not enhancements. Defendant analogizes the case to *People v. Sanders*, 2016 IL App (3d) 130511, where the appellate court vacated a sentence based on a double enhancement. In *Sanders*, the trial court sentenced the defendant for offenses including first degree murder. In addressing the aggravating factors, the trial court said, " '[A]mong other things, the defendant's conduct did cause or threaten serious harm. It may be inherent in the actual fact that he committed a murder, but it did occur.' " *Sanders*, 2016 IL App (3d) 130511, ¶ 6. Thus, the trial court in *Sanders* intentionally applied a double enhancement despite recognizing that the aggravating factor was inherent in the offense. Here, by contrast, the court indicated its awareness of the prohibition against double enhancements and did not purport to apply a double enhancement.

¶ 36    Moreover, the trial court appropriately considered the circumstances of the offense and the degree of harm that defendant's actions threatened. The offense of which defendant was convicted requires "an injury" to a police officer. 720 ILCS 5/31-1(a-7) (West 2020). There are innumerable ways a person might resist an officer, and there is a broad spectrum of how severely an officer might be injured. Here, a reasonable inference from the evidence was that defendant intentionally reversed a car while Stewart was partially inside the car and while Calhoun was standing close enough nearby to get hit. Defendant did not stop until Calhoun started to pull her

service weapon and yelled at him. Defendant then put the car in "drive," hitting Calhoun with the car and running over her foot as he sped away. Operating a vehicle in this manner posed a uniquely high risk of injury to both Stewart and Calhoun—more so than if defendant had fled the scene on foot, for example. As the court recognized, it was a "miracle" nobody was injured more severely. Rather than serving as an improper double enhancement, the court's comments were part of a proper analysis of the nature and circumstances of defendant's conduct. Nothing in the court's comments suggests it enhanced defendant's sentence based on the mere fact that Calhoun sustained an injury.

¶ 37        In arguing to the contrary, defendant notes that (1) the State urged the trial court to consider the mere fact of injury as an aggravating factor and (2) the court said it agreed with the State. According to defendant, "[i]n adopting the State's position, the trial court necessarily implied that its sentence was based, at least in part, on the State's argument that [defendant's] conduct caused injury." We discern no error. The court twice mentioned agreeing with the State. Specifically, the court "agree[d] with the prosecutor" that it was necessary "to impose a sentence to deter others." The court later said it "agree[d] with the prosecutor on this case" that a five-year prison sentence was more appropriate than probation. In context, the court's comments cannot reasonably be interpreted as suggesting the court was applying a double enhancement.

¶ 38        Accordingly, we hold defendant has not met his burden to show that a clear or obvious error occurred.

¶ 39                    B. Excessive Sentence

¶ 40        Defendant next argues that his five-year prison sentence is excessive.

¶ 41        The Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful

citizenship." Ill. Const. 1970, art. 1, § 11. "A reviewing court gives substantial deference to the trial court's sentencing decision because the trial judge, having observed the defendant and the proceedings, is in a much better position to consider factors such as the defendant's credibility, demeanor, moral character, mentality, environment, habits, and age." *People v. Snyder*, 2011 IL 111382, ¶ 36. A statutorily authorized sentence is presumptively proper, and we may not disturb such sentence absent an abuse of discretion. *People v. Musgrave*, 2019 IL App (4th) 170106, ¶ 56. "A trial court's sentence is an abuse of discretion if it is greatly at odds with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense." *Musgrave*, 2019 IL App (4th) 170106, ¶ 56. In reviewing a sentencing challenge, we may not substitute our judgment for the trial court's as to the weight to be attributed to applicable factors. *Musgrave*, 2019 IL App (4th) 170106, ¶ 56. "Absent explicit evidence to the contrary, we also presume the court considered all mitigating factors." *People v. Page*, 2022 IL App (4th) 210374, ¶ 52.

¶ 42       Defendant's five-year prison sentence is statutorily authorized, and it is one year less than the maximum extended-term sentence. Given defendant's criminal record and the seriousness of his conduct, the sentence is neither greatly at odds with the spirit and purpose of the law nor manifestly disproportionate to the nature of the offense. Although the defense requested "time served" plus probation, the trial court reasonably determined a prison sentence was warranted. Defendant had a significant criminal record, along with a history of not complying with the conditions of his probation. Defendant also had previously served a two-year prison sentence for domestic battery.

¶ 43       Defendant argues the trial court exaggerated the gravity of harm to Calhoun. According to defendant, a five-year prison sentence was unwarranted where Calhoun sustained only "modest harm." This argument is unpersuasive, as it ignores the extremely serious nature of

defendant's conduct. While attempting to flee from Calhoun, defendant dragged Stewart with his car, hit Calhoun with the car twice, and ran over Calhoun's foot. The court did not exaggerate Calhoun's injuries. Rather, the court appropriately recognized that defendant's actions easily could have resulted in more serious injuries. As mentioned above, the seriousness of the offense was not just that defendant resisted Calhoun but the manner in which he did so.

¶ 44        Defendant argues the evidence showed he was not aware he was dragging Stewart until Calhoun informed him of that fact. According to defendant, because he immediately stopped the car when he learned he was dragging Stewart, he "did have concern for the safety of others." The record does not support defendant's position. Calhoun testified that defendant dragged Stewart 15 to 20 feet while Stewart was almost sitting on him. Defendant then put the car in "drive," made a sharp left turn, hit Calhoun, ran over her foot, and left the scene. The evidence justified the trial court's conclusion that defendant showed no concern for the safety of others.

¶ 45        Defendant further maintains that the trial court discounted evidence of his rehabilitative potential. Defendant notes that he expressed remorse for his actions, he had strong family support, he was employed at the time of the offense, and he lost his brother while awaiting trial. Defendant proposes that the court sentenced him without regard for his rehabilitative potential.

¶ 46        The record likewise does not support this argument. Trial courts have discretion to determine which of the four purposes of sentencing—retribution, deterrence, incapacitation, and rehabilitation—predominate in a given case. *Page*, 2022 IL App (4th) 210374, ¶ 52. The trial court stated that it considered defendant's rehabilitative potential. "In fashioning a sentence, the trial court need not give a defendant's rehabilitative potential greater weight than the seriousness of the offense." *People v. Anderson*, 2021 IL App (2d) 191001, ¶ 24. Nothing in the court's comments

suggests that defendant lacks rehabilitative potential. Nevertheless, the court reasonably determined that the totality of the circumstances justified a five-year prison sentence.

¶ 47       Defendant also argues that the trial court placed "undue weight on the value of deterrence." According to defendant, he did not intend to hurt Calhoun (the jury acquitted him of aggravated battery), and deterrence is a marginally relevant consideration when a defendant's conduct is unintentional. See *Martin*, 119 Ill. 2d at 459 ("Since it is exceedingly difficult to deter unintentional conduct, an enhanced penalty would have very little, if any, deterrent effect on potential offenders."). Defendant acknowledges "the offense of resisting a peace officer may be deterrable in the way the trial court suggested." However, defendant notes that the maximum sentence for resisting a peace officer *without* a resulting injury is one year of incarceration. 720 ILCS 5/31-1(a) (West 2020) (establishing that resisting without a resulting injury is a Class A misdemeanor); 730 ILCS 5/5-4.5-55(a) (West 2020) (providing that Class A misdemeanors are punishable by less than one year of imprisonment). From these premises, defendant concludes that "[d]eterrence of that which was unintentional, the minor injury to Calhoun, cannot possibly justify the imposition of additional prison time."

¶ 48       In *Martin*, the defendant, who worked in a massage parlor, obeyed her manager's instruction to retrieve a shotgun when a fight broke out among the manager and inebriated customers. *Martin*, 119 Ill. 2d at 455-56. Although the evidence was "not clear" as to whether the defendant pulled the trigger of the shotgun, the gun somehow discharged, killing one of the customers. *Martin*, 119 Ill. 2d at 456. It was in this context that our supreme court mentioned that deterrence was only a marginally applicable sentencing factor for the defendant's conviction of involuntary manslaughter. *Martin*, 119 Ill. 2d at 459.

¶ 49        *Martin*'s reasoning does not apply here. The defendant in *Martin* found herself in a dangerous situation through no fault of her own, and she reacted by following her manager's instructions. Here, by contrast, defendant's choices turned what should have been a routine police encounter into a dangerous situation. Defendant could have stayed at the scene and allowed Calhoun to do her job, including determining whether Stewart was correct that defendant had a warrant. Instead, defendant chose to drive away from the scene in a manner that endangered both Stewart and Calhoun in a school parking lot. The trial court reasonably considered that other members of the public should be deterred from making similar choices. Deterrence may be a relevant consideration where a defendant makes conscious choices that cause harm to another person, even if the defendant did not intend such harm. See *People v. Martin*, 289 Ill. App. 3d 367, 376-77 (1997) (holding that deterrence was a relevant aggravating factor where the defendant was convicted of reckless homicide).

¶ 50        In his reply brief, defendant asserts that "the trial court appeared to be sentencing [defendant] for an offense of which he was not convicted"—aggravated battery. Defendant also proposes that the court showed "personal disdain for defendants in [defendant's] position." These arguments do not change our analysis. The court never said or suggested that defendant intentionally injured Calhoun. The court's comments at sentencing were focused on the seriousness of defendant's conduct, not the court's personal disdain for people who resist police officers.

¶ 51        Accordingly, we determine that the trial court did not abuse its discretion by sentencing defendant to five years in prison.

¶ 52                                    C. MSR

¶ 53    Finally, defendant argues, and the State concedes, that his MSR term should be reduced to six months. We accept the State's concession. After defendant filed his notice of appeal, Public Act 102-1104 (eff. Dec. 6, 2022) went into effect. The relevant statute now establishes a six-month MSR term for the offense of which defendant was convicted. Pub. Act 102-1104 (eff. Dec. 6, 2022) (amending 730 ILCS 5/5-8-1(d)(3)). The statute further specifies that the amendments "apply to all individuals released on mandatory supervised release on or after the effective date of this amendatory Act of the 102nd General Assembly, including those individuals whose sentences were imposed prior to the effective date of this amendatory Act of the 102nd General Assembly." Pub. Act 102-1104 (eff. Dec. 6, 2022) (amending 730 ILCS 5/5-8-1(d)(3)). In accordance with this statute, we reduce defendant's MSR term to six months.

¶ 54                                    III. CONCLUSION

¶ 55    For the reasons stated, we reduce defendant's MSR term to six months but affirm the judgment in all other respects.

¶ 56    Affirmed as modified.