THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MARK C. HORSTMAN, Defendant-Appellant.

Fifth District    No. 80-561

Opinion filed November 19, 1981.

18

James E. Wallis, of Gitchoff and Wallis, of Granite City, for appellant.

Donald W. Weber, State's Attorney, of Edwardsville (Martin N. Ashley and Raymond F. Buckley, Jr., both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE JONES delivered the opinion of the court:

Defendant, Mark C. Horstman, pleaded guilty to the offense of reckless homicide and was sentenced to two years' imprisonment by the circuit court of Madison County. Defendant appeals both the sentence and the trial court's denial of his post-trial motions to have the sentence reduced and to withdraw the guilty plea and vacate judgment. We also consolidated for oral argument and opinion defendant's appeal of the trial court's denial of his petition for post-conviction relief.

Defendant was originally charged by a two-count information with the offenses of reckless homicide and driving under the influence of intoxicating liquor. Pursuant to a plea negotiation, the count charging defendant with driving under the influence was dismissed, and defendant

pleaded guilty to the offense of reckless homicide. In exchange for that plea the State joined with the defense in recommending that defendant be placed on 2½ years' probation and fined $1500. After the court explained the nature of the charge defendant stated that he understood it. The court then admonished defendant of the rights that he would forego by pleading guilty and stated that defendant could receive from one to three years' imprisonment and that the court was not bound by the State's sentencing recommendation. The court then asked the prosecution for a factual basis for the plea.

The prosecutor stated that if the matter were to go to trial the State would call the State trooper who investigated the accident and that officer would testify that defendant's automobile had crossed the centerline and collided head on with a motorcycle, with the result that the cyclist was fatally injured. According to the prosecutor the People would also corroborate the police officer's testimony with the testimony of both the county coroner and a motorist, who herself was forced to swerve by defendant moments before the crash and who observed the fatal collision scene seconds after impact. In response to the court's questioning, defendant stated that he agreed with that recitation of the facts and had nothing to add. Defendant's guilty plea was subsequently accepted, and the court ordered the probation department to compile a presentence report for the sentencing hearing. The presentence report disclosed that defendant's only criminal convictions were three convictions for possessing small amounts of marijuana in 1972, 1973 and 1974 and that he had paid fines and successfully completed terms of probation for those offenses. On two of those occasions defendant had also been charged with offenses arising from intoxication, but the report noted no dispositions for those offenses. No police contact was noted for the six-year period immediately preceding this charge. The report also disclosed that during that time defendant had maintained a good employment record and had done a good job of supporting his wife and stepdaughter. It also noted that defendant had "the ability and potential to be a productive member of society and appears to be a very good probation risk." However, the report concluded by stating that "due to the seriousness of the present offense and the fact that he has four prior criminal convictions, this officer does not recommend probation."

At the sentencing hearing the author of the presentence report, Probation Officer Hancel Bailey, was called by defendant. Bailey reiterated his belief that defendant was a good probation risk and admitted that the statement made in his presentence report concerning defendant's four prior convictions was inaccurate. Defendant had only three prior convictions for marijuana possession, and the probation department had no record of a disposition in the fourth case. Bailey stated that his recom-

mendation against probation had nothing to do with defendant's ability to complete successfully a term of probation but was based solely upon the seriousness of the instant offense. Bailey testified that his recommendation would have been the same even if defendant had no prior convictions. During the sentencing hearing defendant moved to strike a portion of the presentence report which referred to empty beer cans, one of which was still cool when found in defendant's vehicle at the time of the collision. The State objected stating that it was a part of the case and "should be assessed whatever weight the court so wishes." The court refused to strike that portion of the report. In addition to the presentence report the court received, without objection, several letters of recommendation from defendant's employers and business associates. The court also received testimony from defendant's wife and from his uncle, who is a trade union official. Both testified as to defendant's good character and his reputation as a hard worker. The wife stated that defendant was a good provider and that without his support she and her daughter would most probably be reduced to welfare.

At the conclusion of the hearing the court stated that after considering the Illinois Criminal Code, the serious harm caused and defendant's prior criminal record it was rejecting the recommendation of probation and instead imposing a sentence of two years' imprisonment.

Defendant filed a motion to vacate judgment and withdraw his guilty plea and a motion for a reduction of sentence. In support of these motions defendant introduced the affidavit of J. William Lucco, an attorney not involved in the case. According to that affidavit, the trial judge in this case spoke with Lucco before defendant's sentencing hearing and stated that he had a tough sentencing hearing coming up and that he believed that the State was sorry that it had recommended probation.

At the hearing on the post-trial motions the judge stated for the record that while talking to Lucco and others about criminal law in general he had said that he had a tough sentencing decision coming up and that he thought the State would regret having recommended probation after seeing the presentence report. Neither the judge's comments nor Lucco's affidavit indicated that the judge had in any way revealed his thinking in the matter, nor was there anything to suggest that the judge had solicited or received any advice.

In arguing its post-trial motions the defense contended: (1) that the trial judge had acted improperly and (2) that the prosecution had in effect breached its agreement not to recommend imprisonment by: (a) cross-examining the probation officer as to *his* reasons for recommending imprisonment and (b) by objecting to deleting the reference to the beer cans from the presentence report. Following the hearing the trial court denied the post-trial motions.

Defendant filed notice of appeal, and following a hearing which allowed defendant's motion to supplement the record on appeal, defendant filed a petition for post-conviction relief and a petition for relief from judgment under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 72). Defendant's post-conviction petitions were denied, and his appeal from that denial has been consolidated with his direct appeal.

Defendant's first contention on direct appeal is that the two-year sentence was excessive. Although defendant's prior criminal record was relatively minor it did involve the voluntary use of marijuana, the effects of which are not dissimilar to the mind distorting attributes of alcohol, which contributed to the death here. In addition, defendant's prior arrests for intoxication, while not resulting in convictions and not providing a basis for sentencing, can be considered in denying an application for probation. (*People v. Andreano* (1978), 64 Ill. App. 3d 551, 558-59, 381 N.E.2d 783, 789.) Even though a resulting death is inherent in all charges of reckless homicide and even though the legislature allows probation as a permissible disposition for reckless homicide, the resulting death is nevertheless a serious consequence, the consideration of which is mandated by statute. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(a)(1); *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) Similarly, the need to deter others from engaging in similar conduct is also a statutorily mandated consideration. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(a)(7).) This consideration is particularly applicable to reckless homicide which is often committed by otherwise law abiding citizens who decide to drive after having become intoxicated. Upon these people, unlike hardened criminals, the knowledge of a likely prison sentence would have a real deterrent effect, and largely for such reasons similar sentences have been imposed in similar situations. *People v. Simkins* (1978), 62 Ill. App. 3d 758, 379 N.E.2d 391; *People v. Gray* (1972), 7 Ill. App. 3d 526, 288 N.E.2d 26.

■■ In addition to the need to deter like conduct, the court was faced with other considerations. Although it is undeniable that defendant has an interest in sentencing, it is often forgotten that the public also has an interest in sentencing. This is especially true when, as here, similar prior conduct by defendant casts a doubt upon rehabilitation potential and the usefulness of probation. Under the facts of this case we do not believe that the sentence imposed was an abuse of discretion (see *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882), and we see no merit to the claim that the sentence was excessive.

■■ Defendant attacks the sentence imposed on him by claiming that the trial judge merely followed the probation officer's recommendation rather than making an independent sentencing determination. Since probation is a permitted disposition for reckless homicide, the probation

officer was in error in drawing the legal conclusion that probation should be denied solely because of the seriousness of the offense. However, we find nothing in the record to suggest that the trial court gave any consideration to such reasoning or failed to draw the proper legal conclusion. Not only is there a strong presumption that a judge's decision is based upon proper legal reasoning (*People v. Bey* (1972), 51 Ill. 2d 262, 281 N.E.2d 638; *People v. Hubert* (1977), 51 Ill. App. 3d 394, 366 N.E.2d 909), but here the judge acknowledged that he faced a "tough" decision and that he had carefully assessed the proper factors. We find no basis for the claim that the trial judge abdicated to the probation officer his statutorily imposed duty to make an "independent assessment." Ill. Rev. Stat. 1979, ch. 38, par. 1005—4—1(5)(b).

■■ Defendant also contends that the trial judge acted improperly during conversations with Lucco and others. We note from the outset that this case is not similar to *People v. Sumner* (1976), 40 Ill. App. 3d 832, 354 N.E.2d 18, in which the judge improperly solicited and received opinions as to whether probation would depreciate the seriousness of defendant's actions. In that case the judge engaged in *ex parte* communication designed to influence his judicial action as prohibited by Supreme Court Rule 61(c)(16) (73 Ill. 2d R. 61(c)(16)). The trial judge here merely confided to persons not involved in the case that he had a tough sentencing decision to make and that he believed the prosecution would regret having recommended probation. While, perhaps, it might be best if all judges became mutes once they left their courtrooms, such is not possible, and we find nothing improper to have occurred here. Nothing in this record even hints that the trial judge either revealed his thinking or that he solicited or received any outside advice.

■■■ Defendant's next contention on direct appeal is that the trial court erred by considering information contained within the presentencing report which referred to empty but still cool beer cans found in defendant's car at the time of the accident. At trial defendant did not in any way argue that such information was inaccurate, and he therefore may not do so on appeal. (*People v. Meeks* (1980), 81 Ill. 2d 524, 411 N.E.2d 9; *People v. Washington* (1962), 23 Ill. 2d 546, 179 N.E.2d 635.) As to defendant's claims concerning the relevancy and competency of such information, we again note that there is a strong presumption that a trial judge will consider only that which is competent. (*Bey; Hubert.*) In addition, it is well recognized that in sentencing the court is not confined to the narrow issue of guilt, nor is it bound by rigid adherence to rules of evidence. Instead, the sentencing court may search anywhere within reasonable bounds for accurate information concerning surrounding circumstances which tend to mitigate or aggravate the offense and for reliable information concerning defendant's life and characteristics. (*Meeks.*) The information

contained within the report was both relevant and competent for the purpose of sentencing, and we find no error in its inclusion. Further, even if error did occur it could in no way be termed prejudicial in view of defendant's own admission to the probation officer that he consumed 10 to 12 beers prior to the accident.

■■ Related to defendant's argument that such information should have been excluded from the presentencing report is his argument that the prosecution, in effect, breached its plea agreement to recommend probation. Defendant contends that this was done by the prosecutor's cross-examination of a witness favorable to imprisonment and by objection to excluding reference to the beer cans from the presentencing report. Even if defendant has not waived this argument by his failure to present it below (see *People v. Smith* (1975), 28 Ill. App. 3d 908, 329 N.E.2d 896), we find none of the prosecutor's actions to have been inconsistent with his plea agreement. By the terms of that agreement the prosecutor agreed to (1) dismiss the charge of driving while intoxicated, (2) delete references to intoxication in the charging documents, and (3) to recommend a sentence of probation. The prosecutor scrupulously adhered to his agreement. Although the prosecutor in closing argument stated that the court must impose an appropriate sentence he concluded by stating that he stood by his recommendation that probation would be appropriate. In addition, the charging document deleted all references to intoxication. Never was it agreed that the probation department's report would exclude reference to the circumstances surrounding the offense, nor was it agreed that the prosecutor could not cross-examine the probation officer as to his views once the defendant called him as a witness for purposes of attacking his recommendation. The probation department is an entity separate and apart from the State's Attorney's office, and the prosecutor is not responsible for the actions of the probation department. In this case, no representation was made by the prosecutor that he would attempt to influence or control the actions of the probation department. Therefore the actions of the probation department could not result in a breach of the agreement where the prosecutor did no more than question the probation officer as to his independent recommendation, as brought forth by the defense during direct examination. To hold otherwise would force the probation department to become subservient to the prosecutor. This would not only raise serious due process questions, it would also deny the court the benefit of independent sentencing information.

■■ Defendant's final contention on direct appeal is that the trial court erred in accepting the guilty plea without first obtaining a sufficient factual basis for the plea as required by Supreme Court Rule 402 (73 Ill. 2d R. 402). In this case there were no eyewitnesses to the accident itself. However, there was a motorist who had been forced to swerve because of

defendant's driving in the wrong lane only moments before the accident, and she had observed the accident scene only seconds after the crash. The prosecutor stated that both she and an investigating officer would, if called, testify that the position of the vehicles showed defendant to have been in the wrong lane. When asked by the court if he had anything to add to this recitation by the prosecutor, defendant replied negatively. We see no way that this factual basis can be characterized as incomplete merely because defendant later told the probation officer that he may or may not have been in the wrong lane and that he had no recollection of the accident. To allow this type of statement to raise a doubt as to a previously tendered and sufficient factual basis would be to invite all defendants to question the factual basis for a guilty plea once court is recessed so they could later attack the plea if not pleased with the sentence imposed. Additionally, no disagreement was voiced at the time the factual basis was tendered even though defendant had an opportunity to do so.

Since we have found no reversible error to have occurred during defendant's trial, we affirm the judgment upon the direct appeal.

■■ As to defendant's appeal of the post-conviction proceedings, we find it impossible to refute the statement made by the prosecution in its brief:

> "In appealing from the denial of his post-conviction and section 72 petitions, the defendant submits a brief which * * * appears to be a clone of the brief which he filed in his direct appeal. He presents the same arguments, in the same order, and in virtually identical language."

Neither a post-conviction petition nor a section 72 petition are designed as a substitute for direct appeal. (*People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649, *cert. denied* (1979), 444 U.S. 833, 62 L. Ed. 2d 42, 100 S. Ct. 63; *People v. Frank* (1971), 48 Ill. 2d 500, 272 N.E.2d 25; *People v. Jennings* (1971), 48 Ill. 2d 295, 269 N.E.2d 474.) Such petitions cannot be used to relitigate claims based on the trial record. (*Brunswick v. Mandel* (1974), 59 Ill. 2d 502, 322 N.E.2d 25.) Such procedures are designed only to correct unknown errors of fact which, if known at the time of trial, probably would have changed the result. (*Berland.*) Since defendant did nothing more than raise the same issues brought up on direct appeal, he failed to state a cause of action in the post-conviction petitions, and we affirm the trial court's denial of said petitions.

Affirmed.

KASSERMAN, P. J., and KARNS, J., concur.