THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARK MARTIN, Defendant-Appellant.

Fourth District   No. 4—96—0241

Opinion filed June 30, 1997.

Daniel D. Yuhas and Randall B. Rosenbaum, both of State Appellate Defender's Office, of Springfield, for appellant.

Patrick W. Kelley, State's Attorney, of Springfield (Norbert J. Goetten, Robert J. Biderman, and James Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In April 1991, defendant, Mark Martin, struck and killed three pedestrians while driving his pickup truck. In January 1993, a jury found defendant guilty of three counts of reckless homicide (Ill. Rev. Stat. 1991, ch. 38, par. 9—3(a)), two counts of driving while under the influence of alcohol (DUI) (Ill. Rev. Stat. 1991, ch. 95$^1$/2, pars. 11—501(a)(1), (a)(2)), and one count of leaving the scene of an accident (Ill. Rev. Stat. 1991, ch. 95$^1$/2, par. 11—401(a)). In March 1993, the trial court sentenced defendant to 14 years in prison on each reckless homicide conviction and 364 days on the leaving the scene of the accident conviction, with all sentences to be served concurrently. Defendant appealed, and this court affirmed. See *People v. Martin*, 266 Ill. App. 3d 369, 640 N.E.2d 638 (1994).

In February 1996, defendant filed a *pro se* petition for postconviction relief, alleging only that the trial court abused its discretion by considering the deaths of the victims as an aggravating factor at sentencing. The court subsequently dismissed defendant's petition as patently without merit pursuant to section 122—2.1(a)(2) of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122—2.1(a)(2) (West 1994)). In its order of dismissal, the court specifically found that (1) defendant's claim failed to allege a constitutional violation; (2) defendant had waived any claim regarding sentencing because he failed to raise the issue on direct appeal; and (3) the court considered "all appropriate factors" in imposing the sentence.

Defendant appeals, arguing that the trial court erred by dismissing his postconviction petition because it presented a "meritorious claim" for relief due to a constitutional violation—namely, that defendant's counsel on direct appeal provided ineffective assistance by failing to raise the issue that the court considered improper aggravating factors at sentencing.

We affirm.

## I. POST-CONVICTION HEARING ACT

In *People v. Henderson*, 171 Ill. 2d 124, 131, 662 N.E.2d 1287, 1292 (1996), the supreme court discussed the general rules regarding postconviction proceedings, as follows:

"The [Act] provides a remedy for defendants who have suffered a substantial violation of their constitutional rights at trial. [Citation.] A post-conviction proceeding is not an appeal of the underlying conviction; rather, it is a collateral attack on the trial court proceedings in which a defendant attempts to establish constitutional violations that have not been and could not have been previously adjudicated. [Citation.] The defendant bears the burden of

establishing that a substantial violation of his constitutional rights occurred."

It is within this context that we address defendant's claim.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL ON DIRECT APPEAL

### A. Waiver

Defendant argues that the trial court erred by dismissing his postconviction petition because it presented a meritorious claim that his counsel on direct appeal provided ineffective assistance by failing to raise the issue that the court considered improper aggravating factors at sentencing. Defendant specifically contends that even though his petition did not in fact allege ineffective assistance of appellate counsel, it should be viewed as presenting that claim because the waiver doctrine is relaxed where "the alleged issue of ineffective assistance of counsel stems from counsel on appeal." We disagree.

■ In support of his relaxed waiver contention, defendant relies on *People v. Barnard*, 104 Ill. 2d 218, 229, 470 N.E.2d 1005, 1008 (1984), and *People v. Whitehead*, 169 Ill. 2d 355, 371, 662 N.E.2d 1304, 1311-12 (1996). In *Barnard*, the defendant had not raised on direct appeal the issue of trial counsel's competency; instead, he raised the issue for the first time in his petition for leave to appeal to the supreme court. The supreme court nonetheless addressed that issue and other trial errors (as a matter of administrative convenience) "since defendant may raise the question of trial counsel's competency [in a postconviction petition] under the [Act]." *Barnard*, 104 Ill. 2d at 229, 470 N.E.2d at 1008. In *Whitehead*, the supreme court held that a postconviction petition claim may survive the bar of waiver when (1) the alleged waiver stems from ineffective assistance of counsel on appeal; (2) " 'where fundamental fairness so requires' "; and (3) where the facts relating to the claim do not appear on the face of the original appellate record. *Whitehead*, 169 Ill. 2d at 371-72, 662 N.E.2d at 1311-12, quoting *People v. Gaines*, 105 Ill. 2d 79, 91, 473 N.E.2d 868, 875 (1984). In *Whitehead*, the defendant's postconviction petition actually alleged that appellate counsel was ineffective for failing to raise a certain issue on direct appeal.

■ The present case is far different from both *Barnard* and *Whitehead*. Here, defendant's postconviction petition *never mentions* the issue of ineffective assistance of his counsel on direct appeal. If this court accepted the position defendant asserts, nothing would stop a defendant's counsel on appeal from a dismissal of a postconviction petition from combing the entire record and raising new arguments— couched in terms of ineffective assistance of counsel on direct ap-

peal—for the sole purpose of avoiding the application of *res judicata* and waiver.

In *People v. Davis*, 156 Ill. 2d 149, 163-64, 619 N.E.2d 750, 758 (1993), the supreme court addressed the related issue of postconviction counsel's duty to examine the record and wrote the following:

> "[I]t is the substance of the *petitioner's* claims, in his initial post-conviction pleading, which, in the first instance, determines the fate of the petitioner's claims. The post-conviction court's determination concerning the merit of those claims is based solely upon the *petitioner's* articulation of the same.
>
> Post-conviction counsel is only required to investigate and properly present the *petitioner's* claims. Had the legislature intended otherwise, it would, logically, have provided for the appointment of counsel prior to the filing of the original petition. \*\*\*
>
> [In a case where the post-conviction court summarily dismisses an original petition for lack of merit], the court rules upon the original petition based solely upon the substance of the claims as presented by the petitioner. *No attorney is appointed,* either prior to or *after the court's determination, to examine the record for claims which could have been, but were not, asserted.* [(Emphasis added.)] Yet, it is conceivable that substantial constitutional claims exist which the petitioner, as a layperson, would not have perceived. \*\*\* The post-conviction court may, nonetheless, properly dismiss the petition without regard to the existence of such other claims." (Emphasis in original.)

We conclude that defendant—by wholly failing to make a claim in his postconviction petition that his counsel on direct appeal provided ineffective assistance—has waived such a claim.

## B. The Merits

Even assuming defendant had not waived his claim of ineffective assistance of appellate counsel, we conclude that defendant's counsel on direct appeal did not provide ineffective assistance.

Claims of ineffective assistance of appellate counsel are evaluated under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). A defendant who contends that appellate counsel rendered ineffective assistance by failing to argue a particular issue must show that (1) " 'the failure to raise that issue was objectively unreasonable' " (performance component) and that, " 'but for this failure, his sentence or conviction would have been reversed' " (prejudice component). *People v. Flores*, 153 Ill. 2d 264, 283, 606 N.E.2d 1078, 1087 (1992), quoting *People v. Caballero*, 126 Ill. 2d 248, 270, 533 N.E.2d 1089, 1096 (1989).

Further, unless the underlying issues are meritorious, the defendant obviously suffered no prejudice due to appellate counsel's failure to raise them on direct appeal. *People v. Coleman*, 168 Ill. 2d 509, 523, 660 N.E.2d 919, 927 (1995).

Initially, we note that Lawrence Essig of the office of the State Appellate Defender, who was appointed to represent defendant on direct appeal, raised eight issues and argued each issue thoroughly before this court. See *Martin*, 266 Ill. App. 3d 369, 640 N.E.2d 638; see also *Coleman*, 168 Ill. 2d at 523, 660 N.E.2d at 927, quoting *People v. Collins*, 153 Ill. 2d 130, 140, 606 N.E.2d 1137, 1142 (1992) (appellate counsel " 'has no obligation to raise every conceivable argument which might be made, and counsel's assessment of what to raise and argue will not be questioned unless it can be said that his judgment in this regard was patently erroneous' ").

In addition, we conclude that had Essig raised on direct appeal the issue that the trial court considered improper aggravating factors at sentencing, it would not have mattered to this court because the issue is not meritorious.

At the sentencing hearing in this case, the trial court stated, in relevant part, the following:

"I've reviewed all the statutory aggravating and mitigating factors. I have considered the material in the presentence report as I've indicated here this morning. I have listened to the evidence presented here today. I have listened to [defendant's] statements, and although I've considered all of the factors, I think there are three things that perhaps bear some comment this morning. The first one is, again, something everyone here has mentioned this morning, and that is that the [d]efendant's actions in this case took three lives. For that conduct alone, I think the [c]ourt would be warranted in imposing a substantial punishment. Interestingly enough, the [Unified Code of Corrections (Code) (730 ILCS 5/1—1—1 *et seq.* (West 1994))] allows the [c]ourt to impose in other types of cases what we call extended term penalty for the taking of multiple lives, but in this case, [the legislature has] already put the extended term provision into the act of reckless homicide by allowing a sentence of between three and 14 years when this [c]ourt finds that someone is under the influence of alcohol, and that's the second factor I think that's very important to the [c]ourt in connection with the case. Regardless of how you characterize them as supervisions or convictions *** [defendant] has had two prior DUI cases in court for which he received supervision on two occasions. They were separated by probation five or six years and apparently the law allowed [defendant] to receive supervision for the second offense. *** [Defendant] is here before us with those

two occurrences on his record and certainly if he learned nothing else, he should have been aware of what the possible impact of driving under the influence of alcohol might have on himself or on others, and I think that that leads us to the last factor, the last point that the [c]ourt has to consider ***. *** [O]n any given day or any given night *** in any place across the country, there are hundreds of thousands of [defendants] all over the place. They are not bad people. They drink and they drive. They leave the tavern and they get in their car. Some of them get home without any problem. Some of them *** get stopped by a police officer and they get a ticket for driving under the influence of alcohol that affects their lives to some extent. Some of them hit a sign or a tree. Some of them might have a personal injury accident where no one is hurt very seriously and some of them like [defendant] kill people on our highways, and more than anything else, I would hope that all of those [defendants], those potential [defendants] who are in our community[,] understand that if you perform an act such as this and if you're one of the unlucky ones whose conduct results in death, then you must be prepared to face the penalty that the law imposes, and in this case, it's made even worse by the fact that it's three deaths. Each death is important in its own way, but there are three individuals who are dead as a result of [defendant's] activities. So if the message goes to the community[,] to other potential people in the community, then that's really all the [c]ourt can hope that can be done in such a case as this."

### 1. *Multiple Deaths As an Aggravating Factor*

Defendant initially contends that the trial court erred by considering the "end result" of defendant's conduct—namely, the deaths of the three victims. Defendant claims that the victims' deaths cannot be considered as an aggravating factor because death is an element implicit in the offense of reckless homicide. We disagree.

In *People v. Saldivar*, 113 Ill. 2d 256, 268-69, 497 N.E.2d 1138, 1143 (1986), quoting *People v. Hunter*, 101 Ill. App. 3d 692, 694, 428 N.E.2d 666, 668 (1981), the supreme court held that

"[a] reasoned judgment as to the proper penalty to be imposed must *** be based upon the particular circumstances of each individual case. [Citations.] Such a judgment depends upon many *relevant* factors, including the defendant's demeanor, habits, age, mentality, credibility, general moral character, and social environment [citations], as well as ' "the nature and circumstances of the offense, including the nature and extent of each element of the offense as committed by the defendant" ' [citations]." (Emphasis in original.)

In so holding, the *Saldivar* court reasoned as follows:

"Sound public policy demands that a defendant's sentence be varied in accordance with the particular circumstances of the criminal offense committed. Certain criminal conduct may warrant a harsher penalty than other conduct, even though both are technically punishable under the same statute. Likewise, the commission of *any offense, regardless of whether the offense itself deals with harm, can have varying degrees of harm* or threatened harm. *The legislature clearly and unequivocally intended that this varying quantum of harm may constitute an aggravating factor* [(emphasis added)]. While the classification of a crime determines the sentencing range, the severity of the sentence depends upon the *degree of harm* caused to the victim and as such may be considered as an aggravating factor in determining the exact length of a particular sentence, *even in cases where serious bodily harm is arguably implicit in the offense for which a defendant is convicted.* [Citations.]" (Emphasis in original.) *Saldivar*, 113 Ill. 2d at 269, 497 N.E.2d at 1143.

In addition, section 5—5—3.2(b)(3) of the Code allows the court to impose an extended term when a defendant is convicted of reckless homicide involving the death of more than one individual. 730 ILCS 5/5—5—3.2(b)(3) (West 1994). Further, in *People v. Compton*, 193 Ill. App. 3d 896, 901, 550 N.E.2d 640, 643 (1990), this court held that the fact that section 5—5—3.2 of the Code (730 ILCS 5/5—5—3.2 (West 1994)) sets forth aggravating factors that the trial court may consider in imposing an extended-term sentence does not prohibit the court from considering such factors in imposing a nonextended-term sentence.

Based upon the foregoing authority, we hold that *multiple deaths* caused by a defendant convicted of reckless homicide constitute an *extreme degree of harm* and as such may properly be considered by the trial court as an aggravating factor in determining the exact length of a sentence when the court is not otherwise considering the existence of multiple deaths to impose an extended term pursuant to section 5—5—3.2 of the Code.

To hold otherwise would simply make no sense. As the supreme court in *Saldivar* noted, "[t]he legislature clearly and unequivocally intended that this varying quantum of harm [present in any offense] may constitute an aggravating factor." *Saldivar*, 113 Ill. 2d at 269, 497 N.E.2d at 1143. Although we agree that death is implicit in the offense of reckless homicide (see *People v. Allan*, 231 Ill. App. 3d 447, 459, 595 N.E.2d 1317, 1327 (1992)), *multiple deaths* reflect an extreme degree of harm that a trial court may consider in determining the severity of a particular sentence. Indeed, the legislature, in enacting section 5—5—3.2(b)(3) of the Code (which clearly allows a trial court

to impose an extended term when it finds that a defendant convicted of reckless homicide has caused more than one death), has recognized that reckless homicide resulting in multiple deaths warrants a harsher penalty. 730 ILCS 5/5—5—3.2(b)(3) (West 1994). Thus, when the court—as in the present case—imposes a sentence that is not extended based on multiple deaths under section 5—5—3.2(b)(3) of the Code, it must still be allowed to otherwise consider the fact that defendant caused the multiple deaths.

In *Compton*, this court not only held that such consideration was proper but also went out of its way to overrule an earlier decision of this court (*People v. Killen*, 106 Ill. App. 3d 65, 67, 435 N.E.2d 789, 790 (1982)), that had held such consideration to be improper. See *Compton*, 193 Ill. App. 3d at 900-01, 550 N.E.2d at 642-43. We also note that *Compton* is consistent with decisions from our sister districts which have considered this issue (see *People v. Butts*, 135 Ill. App. 3d 132, 135, 481 N.E.2d 987, 989 (1985) (fifth district, declining to follow *Killen*); *People v. Jorgensen*, 182 Ill. App. 3d 335, 342-43, 538 N.E.2d 758, 762-63 (1989) (second district, agreeing with *Butts* and declining to follow *Killen*); *People v. Fercsi*, 221 Ill. App. 3d 768, 771, 583 N.E.2d 33, 35 (1991) (first district, declining to follow *Killen* and noting that *Killen* had "been repeatedly rejected"); and *People v. Posedel*, 214 Ill. App. 3d 170, 184-85, 573 N.E.2d 256, 267 (1991) (second district, reaffirming *Jorgensen*'s "express rejection" of *Killen*)), and we are aware of none agreeing with *Killen*.

Given the obvious policy considerations favoring the trial court's being as fully informed as possible when it imposes sentence (see *People v. Anderson*, 284 Ill. App. 3d 708, 714, 672 N.E.2d 1314, 1318 (1996)), we find no justification for concluding that the sentencing court may consider the aggravating factors in section 5—5—3.2(b) of the Code (730 ILCS 5/5—5—3.2(b) (West 1994)) *only* when the court imposes an extended-term sentence and may not consider these factors *at all* when imposing a nonextended-term sentence. To hold otherwise would mean that a court imposing a nonextended-term sentence could *not* consider at sentencing that (1) the defendant committed a felony against a person under 12 years of age or who had a physical handicap (730 ILCS 5/5—5—3.2(b)(4)(i), (b)(4)(iii) (West 1994)) or (2) in a rape case, the defendant participated in a gang rape (730 ILCS 5/5—5—3.2(b)(5) (West 1994)). Clearly, the legislature could not have intended these absurd results.

In this case, the trial court sentenced defendant to 14 years in prison pursuant to section 9—3(e) of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/9—3(e) (West 1994)) whereby the offense of reckless homicide is enhanced from a Class 3 to a Class 2 felony

when the State proves beyond a reasonable doubt that a defendant was under the influence of alcohol or other drugs at the time of the offense. Section 9—3(e) of the Criminal Code also elevates the penalty range under such circumstances—not less than 3 years and not more than 14 years. 720 ILCS 5/9—3(e) (West 1994). Thus, we conclude that the court properly considered the existence of multiple deaths as an aggravating factor where it did not impose an extended term based upon those multiple deaths.

### 2. *Prior Adjudications of Defendant's Guilt in DUI Cases*

Defendant next argues that the trial court erred by considering "the factor of alcohol use as an aggravating factor where the statutory sentencing scheme for the offense was already enhanced due to alcohol use." We disagree.

Defendant mischaracterizes the trial court's comments at sentencing. The court then discussed the last factor—namely, deterrence. Viewing those comments in context, the second factor to which the court referred was clearly not the fact that defendant was driving under the influence at the time of the offense. Rather, the court took notice of defendant's two prior DUI supervisions—a factor the court may properly consider in aggravation. See 730 ILCS 5/5—5—3.2(a)(3) (West 1994).

### 3. *Deterrence*

Last, defendant contends that the trial court erred by considering deterrence as an aggravating factor. Defendant specifically contends that deterrence is not a proper aggravating factor because the offense of reckless homicide "implicates the mental state of recklessness, and not intent." We reject defendant's contention.

In *People v. Huber*, 144 Ill. App. 3d 195, 197, 494 N.E.2d 770, 771 (1986), this court addressed the issue of deterrence as it relates to reckless homicide and wrote the following:

> "Defendant argues essentially that one cannot deter reckless conduct. *** This argument fails when one considers that by definition recklessness includes the conscious disregard of a substantial and unjustifiable risk that a result will follow from one's actions. [Citation.] In *People v. Horstman* (1981), 103 Ill. App. 3d 17, 22, 430 N.E.2d 523, 527, the court noted that the prospect of a prison sentence is more likely to be an effective deterrent in reckless homicide cases where normally law[-]abiding citizens decide to drive after becoming intoxicated. We agree."

We reaffirm our holding in *Huber*. Further, we note that the offense of reckless homicide involving DUI is not only deterrable, it is one of the most deterrable offenses because of the drinking required—and

the time this drinking requires—before the drinker becomes drunk. Typically, the potential DUI defendant—sip by sip, swallow by swallow, drink by drink—becomes intoxicated with the full understanding and expectation that, at some point, he will get behind the steering wheel, drive drunk, and perhaps kill someone.

Thus, it is entirely appropriate for the trial court—as the court did here—to speak in terms of deterrence (when a person chooses to drive drunk, he does not know whether anyone will be hurt, but if he kills people, he will be punished) when sentencing a defendant for reckless homicide. Accordingly, we conclude that the court did not err by considering deterrence as an aggravating factor.

In so concluding, we note that the present case is far different from *People v. Martin*, 119 Ill. 2d 453, 458, 519 N.E.2d 884, 886-87 (1988), the only case defendant cites in support of his contention. In *Martin*, defendant's employer instructed her to get a shotgun after some customers began fighting with the employer. Defendant retrieved the gun, brought it back to the scene of the fight, and the gun accidentally discharged, killing the victim. The supreme court held that deterrence "has, at best, marginal applicability to the circumstances surrounding the offense [of involuntary manslaughter]" because "it is exceedingly difficult to deter unintentional conduct." *Martin*, 119 Ill. 2d at 459, 519 N.E.2d at 887. As we earlier discussed, reckless homicide involving DUI—unlike involuntary manslaughter—involves conscious choices and *intentional* conduct.

Under the circumstances of this case, we agree with the trial court's conclusion that defendant's postconviction petition is patently without merit. Accordingly, we affirm.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

McCULLOUGH and KNECHT, JJ., concur.