NO. 4-96-0241 

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellee, ) Circuit Court of 

v. ) Sangamon County

MARK MARTIN, ) No. 93CF27

Defendant-Appellant. ) 

) Honorable

) Stuart H. Shiffman,

) Judge Presiding.

_________________________________________________________________

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court: 

In April 1991, defendant, Mark Martin, struck and killed three pedestrians while driving his pickup truck.  In January 1993, a jury found defendant guilty of three counts of reckless homicide (Ill. Rev. Stat. 1991, ch. 38, par. 9-3(a)), two counts of driving while under the influence of alcohol (DUI)  (Ill. Rev. Stat. 1991, ch. 95½, pars. 11-501(a)(1), (a)(2)), and one count of leaving the scene of an accident (Ill. Rev. Stat. 1991, ch. 95½, par. 11-401(a)).  In March 1993, the trial court sen­tenced defen­dant to 14 years in prison on each reck­less homi­cide convic­tion and 364 days on the leaving the scene of the accident conviction, with all sentences to be served concurrent­ly.  Defendant ap­pealed, and this court af­firmed.  See 
People v. Martin
, 266 Ill. App. 3d 369, 640 N.E.2d 638 (1994). 

In February 1996, defendant filed a 
pro
 
se
 petition for post-conviction relief, alleging only that the trial court abused its discretion by considering the deaths of the victims as an aggra­vating factor at sentencing.  The court subsequently dis­missed defendant's petition as patent­ly without merit pursuant to section 122-2.1(a)(2) of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-2.1(a)(2) (West 1994)).  In its order of dismiss­al, the court specifically found that (1) defendant's claim failed to allege a constitutional violation; (2) defendant had waived any claim regarding sentencing because he failed to raise the issue on direct appeal; and (3) the court considered "all appro­priate factors" in imposing the sentence.  

Defen­dant ap­peals, arguing that the trial court erred by dismissing his post-conviction petition because it pre­sented a "meri­to­ri­ous claim" for relief due to a constitution­al viola­tion

--namely, that defendant's counsel on direct appeal provided inef­fec­tive assis­tance by failing to raise the issue that the court considered improper aggra­vating factors at sentenc­ing.  

We affirm.      

I. POST-CONVICTION HEARING ACT

 
In 
People v. Henderson
, 171 Ill. 2d 124, 131, 662 N.E.2d 1287, 1292 (1996), the supreme court discussed the general rules regarding post-conviction proceedings, as follows:

"The [Act] pro­vides a remedy for defen­dants who have suf­fered a substan­tial violation of their consti­tutional rights at trial.  [Cita­tion.]  A post-conviction proceeding is not an appeal of the underly­ing convic­tion; rath­er, it is a collateral attack on the trial court proceedings in which a defendant at­tempts to establish constitutional violations that have not been and could not have been previously adjudicated.  [Citation.]  The defendant bears the burden of establishing that a substantial violation of his constitu­tional rights oc­curred."

It is within this context that we address defendant's claim.

II. INEFFECTIVE ASSISTANCE OF COUNSEL ON DIRECT APPEAL 

A. Waiver

Defendant argues that the trial court erred by dismiss­ing his post-conviction petition because it presented a meritori­ous claim that his counsel on direct appeal provided inef­fec­tive assis­tance by failing to raise the issue that the court consid­ered improper aggravating factors at sentencing.  Defendant specifi­cally contends that even though his petition did not in fact allege ineffective assistance of appellate counsel, it should be viewed as presenting that claim because the waiver doctrine is relaxed where "the alleged issue of inef­fec­tive assis­tance of counsel stems from counsel on appeal."  We dis­agree.

In support of his relaxed waiver contention, defendant relies on 
People v. Barnard
, 104 Ill. 2d 218, 229, 470 N.E.2d 1005, 1008 (1984), and 
People v. Whitehead
, 169 Ill. 2d 355, 371, 662 N.E.2d 1304, 1311-12 (1996)
.  In 
Barnard
, the defendant had not raised on direct appeal the issue of trial counsel's compe­tency; instead, he raised the issue for the first time in his petition for leave to appeal to the supreme court.  The supreme court nonetheless addressed that issue and other trial errors (as a matter of administrative convenience) "since defen­dant may raise the ques­tion of trial counsel's competency [in a post-conviction petition] under the [Act]."  
Barnard
, 104 Ill. 2d at 229, 470 N.E.2d at 1008.  In 
White­head
, the supreme court held that a post-convic­tion petition claim may survive the bar of waiver when (1) the alleged waiver stems from inef­fec­tive assis­tance of counsel on appeal; (2) "'where fundamen­tal fairness so requires'"; and (3) where the facts relating to the claim do not appear on the face of the original appellate record.  
White­head
, 169 Ill. 2d at 371-72, 662 N.E.2d at 1311-12, quoting 
People v. Gaines
, 105 Ill. 2d 79, 91, 473 N.E.2d 868, 875 (1984).  In 
White­head
, the defendant's post-convic­tion peti­tion 
actually alleged that appellate counsel was inef­fective for failing to raise a certain issue on direct appeal.

The present case is far different from both 
Barnard
 and 
White­head
.  Here, defendant's post-conviction petition 
never
 
mentions
 the issue of ineffective assistance of his coun­sel on direct appeal.  If this court accepted the position defendant asserts, nothing would stop a defendant's counsel on appeal from a dis­miss­al of a post-conviction petition from combing the entire record and raising new argu­ments--couched in terms of inef­fective assis­tance of counsel on direct appeal--for the sole purpose of avoid­ing the application of 
res
 
judicata
 and waiver.  

In 
People v. Davis
, 156 Ill. 2d 149, 163-64, 619 N.E.2d 750, 758 (1993), the supreme court addressed the related issue of post-conviction counsel's duty to examine the record and wrote the following:

"[I]t is the substance of the 
petitioner's
 claims, in his initial post-conviction plead­ing, which, in the first instance, determines the fate of the petitioner's claims.  The post-conviction court's determination con­cerning the merit of those claims is based solely upon the 
peti­tioner's
 articulation of the same.

Post-conviction counsel is only required to investigate and properly present the 
peti­tioner's
 claims.  Had the legislature intend­ed otherwise, it would, logically, have pro­vided for the appointment of counsel prior to the filing of the original petition.  ***

[In a case where the post-conviction court summarily dismisses an original peti­tion for lack of merit], the court rules upon the original petition based solely upon the substance of the claims as presented by the petitioner.  
No
 
attorney
 
is
 
appointed
, either prior to or 
after
 
the
 
court's
 
determination
, 
to
 
examine
 
the
 
record
 
for
 
claims
 
which
 
could
 
have
 
been
, 
but
 
were
 
not
, 
asserted
.  [(Empha­sis added.)]  Yet, it is conceivable that sub­stan­tial constitu­tion­al claims exist which the peti­tioner, as a layperson, would not have per­ceived.  ***  The post-conviction court may, nonetheless, properly dismiss the peti­tion without regard to the existence of such other claims."  (Emphasis in orig­inal.)

We con­clude that defen­dant--by wholly failing to make a claim in his post-convic­tion peti­tion that his counsel on direct appeal provid­ed ineffec­tive assis­tance--has waived such a claim.     B. The Merits

Even assuming defendant had not waived his claim of ineffective assistance of appellate counsel, we con­clude that defendant's counsel on direct appeal did not provide ineffective assis­tance.

Claims of ineffective assistance of appellate counsel are evaluated under the standard set forth in 
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052  (1984).  A defendant who contends that appellate coun
sel rendered ineffective assistance by failing to argue a particular issue must show that (1) "'the failure to raise that issue was objec­tive­ly unreasonable'" (performance component) and that, "'but for this fail­ure, his sentence or conviction would have been re­versed'" (prejudice component).  
People v. Flores
, 153 Ill. 2d 264, 283, 606 N.E.2d 1078, 1087 (1992), quoting 
People v. Cabal­le­ro
, 126 Ill. 2d 248, 270, 533 N.E.2d 1089, 1096 (1989).   Fur­ther, unless the underlying issues are meritori­ous, the defendant obviously suffered no prejudice due to appel­late counsel's failure to raise them on direct appeal.  
People v. Coleman
, 168 Ill. 2d 509, 523, 660 N.E.2d 919, 927 (1995)
.

Initially, we note that Lawrence Essig of the office of the State Appel­late Defender, who was appointed to represent defen­dant on direct appeal, raised eight issues and argued each issue thor­oughly before this court.  See 
Martin
, 266 Ill. App. 3d 369, 640 N.E.2d 638; see also 
Coleman
, 168 Ill. 2d at 523, 660 N.E.2d at 927, quoting 
People v. Col­lins
, 153 Ill. 2d 130, 140, 606 N.E.2d 1137, 1142 (1992) (appel­late counsel "'has no obliga­tion to raise every conceivable argument which might be made, and counsel's assess­ment of what to raise and argue will not be questioned unless it can be said that his judgment in this regard was patently errone­ous'").  

In addition, we conclude that had Essig raised on direct appeal the issue that the trial court considered improper aggra­vat­ing factors at sentenc­ing, it would not have mattered to this court because the issue is not meritorious.

 At the sen­tenc­ing hearing in this case, the trial court stated, in rele­vant part, the following:

"I've reviewed all the statutory aggra­vating and mitigating factors.  I have con­sidered the material in the pre-sentence report as I've indicated here this morning.  I have listened to the evidence presented here today.  I have listened to [defendant's] statements, and although I've considered all of the factors, I think there are three things that perhaps bear some comment this morning.  The first one is, again, something everyone here has mentioned this morn­ing, and that is that the [d]efendant's ac­tions in this case took three lives.  For that conduct alone, I think the [c]ourt would be warranted in imposing a substantial pun­ishment.  Inter­estingly enough, the [Unified Code of Cor­rections (Code) (730 ILCS 5/1-1-1 
et
 
seq
. (West 1994))] al­lows the [c]ourt to im­pose in other types of cases what we call extended term penalty for the taking of mul­tiple lives, but in this case, [the legis­la­ture has] already put the extend­ed term pro­vision into the act of reck­less homicide by allowing a sentence of be­tween three and 14 years when this [c]ourt finds that someone is under the in­fluence of alco­hol, and that's the second factor I think that's very impor­tant to the [c]ourt in con­nection with the case.  Re­gard­less of how you characterize them as super­visions or convictions *** [de­fendant] has had two prior DUI cases in court for which he received supervision on two occa­sions.  They were separated by probation five or six years and apparently the law allowed [defendant] to receive supervision for the second offense.  ***  [Defendant] is here before us with those two occurrences on his record and certainly if he learned noth­ing else, he should have been aware of what the possible impact of driving under the influ­ence of alcohol might have on himself or on oth­ers, and I think that that leads us to the last factor, the last point that the [c]ourt has to consider ***.  ***  [O]n any given day or any given night *** in any place across the country, there are hundreds of thousands of [defendants] all over the place.  They are not bad people.  They drink and they drive.  They leave the tavern and they get in their car.  Some of them get home without any prob­lem.  Some of them *** get stopped by a po­lice officer and they get a ticket for driv­ing under the influence of alcohol that af­fects their lives to some extent.  Some of them hit a sign or a tree.  Some of them might have a personal injury accident where no one is hurt very seriously and some of them like [defendant] kill people on our highways, and more than anything else, I would hope that all of those [defendants], those potential [defendants] who are in our community[,] understand that if you perform an act such as this and if you're one of the unlucky ones whose conduct results in death, then you must be prepared to face the penalty that the law imposes, and in this case, it's made even worse by the fact that it's three deaths.  Each death is important in its own way, but there are three individuals who are dead as a result of [defendant's] activities.  So if the mes­sage goes to the com­mu­ni­ty[,] to other poten­tial people in the com­mu­ni­ty, then that's really all the [c]ourt can hope that can be done in such a case as this."

1. 
Multiple Deaths As an Aggravating Factor

Defendant initially contends that the trial court erred by considering the "end result" of defendant's conduct--namely, the deaths of the three victims.  Defendant claims that the victims' deaths cannot be considered as an aggravating factor because death is an element implic­it in the offense of reck­less homi­cide.  We disagree.

In 
People v. Saldivar
, 113 Ill. 2d 256, 268-69, 497 N.E.2d 1138, 1143 (1986), quoting 
People v. Hunter
, 101 Ill. App. 3d 692, 694, 428 N.E.2d 666, 668 (1981), the supreme court held that 

"[a] reasoned judgment as to the proper pen­alty to be imposed must *** be based upon the particular circumstances of each individ­ual case.  [Citations.]  Such a judgment depends upon many 
relevant
 factors, including the defendant's demeanor, habits, age, men­tality, credibility, general moral character, and social environment [citations], as well as '"the nature and circumstances of the of­fense, including the nature and extent of each element of the offense as committed by the defendant"' [citations]."  (Emphasis in original.)

In so holding, the 
Saldivar
 court reasoned as follows:

"Sound public policy demands that a defendant's sentence be varied in accordance with the particular circumstances of the criminal offense committed.  Certain criminal conduct may warrant a harsher penalty than other conduct, even though both are techni­cally punishable under the same statute.  Likewise, the commission of 
any
 
offense
, 
regardless
 
of
 
whether
 
the
 
offense
 
itself
 
deals
 
with
 
harm
, 
can
 
have
 
varying
 
degrees
 
of
 
harm
 or threatened harm.  
The
 
legislature
 
clearly
 
and
 
unequivocally
 
intended
 
that
 
this
 
vary­ing
 
quantum
 
of
 
harm
 
may
 
constitute
 
an
 
aggra­vating
 
factor
 [(emphasis added)].  While the clas­si­fi­ca­tion of a crime deter­mines the sentenc­ing range, the severity of the sen­tence de­pends upon the 
degree
 
of
 
harm
 caused to the victim and as such may be con­sidered as an aggravat­ing factor in determin­ing the exact length of a particular sen­tence, 
even
 
in
 
cases
 
where
 
serious
 
bodily
 
harm
 
is
 
argu­ably
 
implicit
 
in
 
the
 
offense
 
for
 
which
 
a
 
defendant
 
is
 
convict­ed
. [Citations.]"  (Em­phasis in original.)  
Saldivar
, 113 Ill. 2d at 269, 497 N.E.2d at 1143.

In addition, section 5-5-3.2(b)(3) of the Code allows the court to impose an extended term when a defen­dant is convict­ed of reckless homicide involving the death of more than one individu­al.  730 ILCS 5/5-5-3.2(b)(3) (West 1994).  Further, in 
People v. Compton
, 193 Ill. App. 3d 896, 901, 550 N.E.2d 640, 643 (1990), this court held that the fact that section 5-5-3.2 of the Code (730 ILCS 5/5-5-3.2 (West 1994)) sets forth aggravating factors that the trial court may consider in imposing an extended-term sen­tence does not prohib­it the court from consid­er­ing such factors in impos­ing a nonextended-term sentence. 

Based upon the foregoing authority, we hold that 
multi­ple
 
deaths
 caused by a defendant convicted of reckless homi­cide constitute 
an 
extreme
 
degree
 
of
 
harm
 and as such may properly be consid­ered by the trial court as an aggravating factor in deter­mining the exact length of a sen­tence when the court is not otherwise considering the existence of multiple deaths to impose an extend­ed term pursuant to section 5-5-3.2 of the Code. 

To hold otherwise would simply make no sense.  As the supreme court in 
Saldivar
 noted, 
"[t]he legislature clearly and un­equiv­ocally intended that this vary­ing quantum of harm [present in any offense] may consti­tute an aggra­vating factor."  
Saldivar
, 113 Ill. 2d at 269, 497 N.E.2d at 1143.  Although we agree that death is implic­it in the offense of reckless homicide (see 
People v. Allan
, 231 Ill. App. 3d 447, 459, 595 N.E.2d 1317, 1327 (1992)), 
multiple
 
deaths
 reflect an extreme degree of harm that a trial court may consider in deter­mining the severi­ty of a partic­ular sen­tence.  Indeed, the legislature, in enact­ing section 5-5-3.2(b)(3) of the Code (which clearly allows a trial court to impose an extend­ed term when it finds that a defendant con­victed of reck­less homi­cide has caused more than one death), has recog­nized that reck­less homi­cide resulting in multiple deaths war­rants a harsher penalty.  730 ILCS 5/5-5-3.2(b)(3) (West 1994).  Thus, when the court--as in the present case--imposes a sentence that is not extended based on multiple deaths under section 5-5-3.2(b)(3) of the Code, it must still be allowed to otherwise consid­er the fact that defen­dant caused the multi­ple deaths.   
 In 
Compton
, this court not only held that such consid­eration was proper but also went out of its way to over­rule an earlier decision of this court (
People v. Killen
, 106 Ill. App. 3d 65, 67, 435 N.E.2d 789, 790 (1982)), that had held such consid­eration to be improper.  See 
Compton
, 193 Ill. App. 3d at 900-01, 550 N.E.2d at 642-43.  We also note that 
Compton
 is consis­tent with deci­sions from our sister dis­tricts which have consid­ered this issue (see 
People v. Butts
, 135 Ill. App. 3d 132, 135, 481 N.E.2d 987, 989 (1985) (fifth district, declining to follow 
Killen
); 
People v. Jorgensen
, 182 Ill. App. 3d 335, 342-43, 538 N.E.2d 758, 762-63 (1989) (second district, agree­ing with 
Butts
 and declin­ing to follow 
Killen
); 
People v. Fercsi
, 221 Ill. App. 3d 768, 771, 583 N.E.2d 33, 35 (1991) (first district, de­clining to follow 
Killen
 and noting that 
Killen
 had "been repeat­edly reject­ed"); and 
People v. Posedel
, 214 Ill. App. 3d 170, 184-85, 573 N.E.2d 256, 267 (1991) (second district, reaffirming 
Jorgensen
's "express rejection" of 
Killen
)), and we are aware of none agree­ing with 
Killen
.  

Given the obvious policy considerations favoring the trial court's being as fully informed as possible when it imposes sentence (
see 
People v. Anderson
, 284 Ill. App. 3d 708, 714, 672 N.E.2d 1314, 1318 (1996)), we find no justi­fi­ca­tion for conclud­ing that the sentenc­ing court may consider the aggra­vating factors in section 5-5-3.2(b) of the Code (730 ILCS 5/5-5-3.2(b) (West 1994)) 
only
 when the court imposes an extended-term sen­tence and may not consider these factors 
at
 
all
 when imposing a nonextended-term sentence.  To hold otherwise would mean that a court imposing a nonextended-term sentence could 
not
 consider at sentencing that (1) the defendant committed a felony against a person under 12 years of age or who had a physical handicap (730 ILCS 5/5-5-3.2(b)(4)(i), (b)(4)(iii) (West 1994)) or (2) in a rape case, the defendant participated in a gang rape (730 ILCS 5/5-5-3.2(b)(5) (West 1994)).  Clearly, the legislature could not have intended these absurd results.   

In this case, the trial court sentenced defendant to 14 years in prison pursuant to section 9-3(e) of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/9-3(e) (West 1994)) whereby the offense of reck­less homi­cide is enhanced from a Class 3 to a Class 2 felony when the State proves beyond a reasonable doubt that a defen­dant was under the influ­ence of alcohol or other drugs at the time of the offense.  Section 9-3(e) of the Criminal Code also ele­vates the penalty range under such circumstances--not less than 3 years and not more than 14 years.  720 ILCS 5/9-3(e) (West 1994).  Thus, we conclude that the court properly consid­ered the exis­tence of multiple deaths as an aggravating factor where it did not impose an extend­ed term based upon those multi­ple deaths.

2. 
Prior Adjudications of Defendant's Guilt
 
in DUI Cases

Defendant next argues that the trial court erred by considering "the factor of alcohol use as an aggravating factor where the statutory sentencing scheme for the offense was already enhanced due to alcohol use."  We disagree.

Defendant mischaracterizes the trial court's comments at sentencing.  The court then discussed the last factor--namely, deter­rence.  Viewing those comments in context, the second factor to which the court referred was clearly not the fact that defen­dant was driving under the influence at the time of the offense.  Rather, the court took notice of defendant's two prior DUI supervisions--a factor the court may properly consider in aggra­vation.  See 730 ILCS 5/5-5-3.2(a)(3) (West 1994).

3. 
Deterrence

Last, defendant contends that the trial court erred by considering deterrence as an aggravating factor.  Defendant specif­i­cal­ly con­tends that deter­rence is not a proper aggra­vat­ing factor because the offense of reckless homi­cide "impli­cates the mental state of recklessness, and not intent."  We reject defendant's contention.
 

In 
People v. Huber
, 144 Ill. App. 3d 195, 197, 494 N.E.2d 770, 771 (1986), this court addressed the issue of deter­rence as it relates to reckless homicide and wrote the following:

"Defendant argues essentially that one cannot deter reckless conduct.  ***  This argument fails when one considers that by definition recklessness includes the con­scious disregard of a substantial and unjus­tifiable risk that a result will follow from one's actions.  [Citation.]  In 
People v. Horstman
 (1981), 103 Ill. App. 3d 17, 22, 430 N.E.2d 523, 527, the court noted that the prospect of a prison sentence is more likely to be an effective deterrent in reckless homicide cases where normally law[-]abiding citizens decide to drive after becoming in­toxicated.  We agree."

We reaffirm our holding in 
Huber
.  Further, we note that the offense of reckless homicide involving DUI is not only deterrable, it is one of the most deterrable of­fenses because of the drinking required--and the time this drinking requires--before the drinker becomes drunk.  Typically, the potential DUI defen­dant--sip by sip, swallow by swallow, drink by drink--becomes intoxi­cated with the full under­standing and expectation that, at some point, he will get behind the steer­ing wheel, drive drunk, and perhaps kill some­one.  
  

Thus, it is entirely appro­priate for the trial court--as the court did here--to speak in terms of deterrence (when a person chooses to drive drunk, he does not know whether anyone will be hurt, but if he kills people, he will be pun­ished) when sen­tenc­ing a defen­dant for reck­less homi­cide.  Accord­ingly, we conclude that the court did not err by consider­ing deterrence as an aggravating factor.

In so concluding, we note that the present case is far differ­ent from 
People v. Martin
, 119 Ill. 2d 453, 458, 519 N.E.2d 884, 886-87 (1988), the only case defendant cites in support of his conten­tion.  In 
Martin
, defendant's employer instructed her to get a shotgun after some customers began fighting with the employer.  Defendant retrieved the gun, brought it back to the scene of the fight, and the gun accidentally discharged, killing the victim.  The supreme court held that deterrence "has, at best, marginal applicability to the circum­stances surrounding the offense [of involuntary manslaughter because] it is exceedingly difficult to deter unintentional conduct."  
Martin
, 119 Ill. 2d at 459, 519 N.E.2d at 887.  As we earlier discussed, reckless homicide involving DUI--unlike involuntary man­slaughter--in­volves conscious choices and 
inten­tion­al
 con­duct.          

Under the circumstances of this case, we agree with the trial court's conclusion that defendant's post-conviction peti­tion is patently without merit.  Accordingly, we affirm.

III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

McCULLOUGH and KNECHT, JJ., concur.